CHARLES H. LaTROBE *et al.*, APPELLANTS, vs. WILLIAM R. HAYWARD, APPELLEE.

In March, 1861, A. agreed to purchase of B certain lots in Tallahassee, Florida, and improvements to be constructed thereon by B. The sum agreed to be paid was an estimated value of the lots and the actual cost of the improvements. After the execution of this agreement, B removes to the State of Maryland, leaving an agent in Florida. A remains in Florida, giving his personal attention to the work, having authority from B to make such additions or alterations in the original plan as he desired. Additions and alterations were made by A. In July, 1865, (between which date, and the date of the completion of the improvements, communication between Maryland and Florida was suspended by war,) B, in Maryland, received a letter from his agent in Flor-

LaTrobe vs. Hayward—Argument of Counsel.

ida, and sought A, then in Maryland, for a settlement. A settlement was made, and a deed subsequently executed for the property. In making such settlement it was the expressed intention of neither party to suffer any considerable loss, nor to surrender any right under the original contract. Through a mistake in the construction of a sentence in the letter of the agent, a final settlement was had, and a note given for a much less sum than was due. This note B, with the consent of A, transferred to C, in payment of a balance due by him (B) for the lots which he (B) had purchased of C. The sentence erroneously construed related to the cost of the alterations in the original plan made by A, of which B was uninformed, and which, from the acts and language of A, he was authorized to believe were inconsiderable, while the proofs show they amounted to a considerable amount: *Held*,

1. That in such case a court of equity should open the settlement; that the true balance ascertained to be due, was a balance of purchase money due upon a sale of real estate; that while the estate at law passed under the deed to the vendee, yet in equity the vendor retained a lien for the balance of the purchase money.

2. That B, having used the note of A, given him in the settlement, to pay a balance due by him (B) to the party from whom he purchased the lots, did not affect his (B's) lien for the balance of the purchase money due him (B) by A, over and above the amount of the note.

3. Where there are equities arising from contract, or by operation of law, by virtue of which the plaintiff is entitled to subject specific property to sale, the courts of the State where the property is situated have jurisdiction, although none of the parties are residents of the State where the property is. In such a case the jurisdiction attaches to the thing, and can only be brought into action where the thing is.

This is an appeal from a final decree in the Circuit Court for Leon County.

The case is fully stated in the first note of the decision and the opinion of the court.

*Samuel J. Douglas* for Appellants.

This is a suit brought to enforce a vendor's lien for the payment of a sum of money claimed to be due the complainant for the completion of a house in the city of Tallahassee, under an agreement between the parties. It is insisted that the court has no jurisdiction, as both the com-

plainant and respondents reside in another and the same State, to-wit : the State of Maryland.

To give a court of equity jurisdiction to hear and determine a case, where both complainant and respondent are non-residents, the proceedings must be *in rem*, and not *in personam*. If the suit is to enforce a claim or demand against the defendant, and not a lien on land, then the proceedings are *in personam*, and must be had in that jurisdiction where the party defendant resides. 1 Bibb, 409 ; 4 Monroe, 436 ; 1 J. J. Marshal, 474 ; 2 Bibb, 444.

If it should be insisted that the subject matter of the suit in this case is to enforce a vendor's lien, and therefore the proceedings are *in rem*, it is answered, that the evidence of the complainant, Hayward, and the answer of the respondents, show conclusively that the lots of land were paid for by the note of the respondent, LaTrobe, which note was received as so much money, and so expressed on its face ; was used as money in payment of the debt of the complainant, Hayward, due to H. R. W. Andrews for the said lots of land, who accepted the note of the respondent as full payment of the debt of the complainant to him. This was before the institution of the suit by complainant.

Andrews, the original owner of these lots of land, could not, after the acceptance of the note of respondent, proceed to enforce a vendor's lien against Hayward, nor could Hayward do so against respondents, they having settled with Andrews his indebtedness to him for these very lots of land, by a payment from LaTrobe, the respondent, for the lots of land on which he now seeks in this suit to enforce a vendor's lien.

At the institution of this suit there was nothing due for the lots of land from the complainant, Hayward, to Andrews, the original owner, or from LaTrobe, the respondent, to Hayward. The note given by LaTrobe to Hayward, and by him transferred to Andrews, was in payment of these lots of land, as shown by the receipt given by Hayward to LaTrobe ; and

after this payment, a deed for the lands was made by Hayward to LaTrobe.

The pretended indebtedness of LaTrobe for work, and labor, and materials, cannot, upon any known principle of law or equity, be the subject of a vendor's lien. The undertaking of the defendant was to pay so much money for the property as it then stood, and for any additional expense for the completion of the building. The evidence shows that the realty, to-wit : the lots of land, have been paid for before the commencement of this suit, and a full settlement made with the very party who would have had a vendor's lien against Hayward, and that a title deed was executed to respondents. If anything remains unsettled, it is for the work, labor and materials used and employed in completing the building. These cannot form the subject of a vendor's lien to authorize a proceeding *in rem*, and is only a personal demand against the respondents, which the party complainant must enforce in a court of law, like any other subject matter of indebtedness cognizable by these courts, and the respondents insist that this indebtedness has been fully paid and discharged.

The implied or equitable lien of a vendor is *only upon the land*, and gives the vendor no right to go into a court of equity to enforce it against the rents and profits thereof, or for work, labor and materials bestowed in the erection of buildings on the land. Such liens can only exist by special statute, which must be strictly followed. 2 Leigh, 353.

2. The complainant, if he has any claim or demand against the respondent, has a complete and adequate remedy at law, and equity will not interfere to give relief and its aid where the remedy at law is adequate and complete. Jeremy's Eq., Book III., ch. 5, p. 505 ; 2 Randolph, 449 ; 2 Johnson's Ch., 169 ; 6 Vesey, 136 ; 1 Brown Ch., 195.

3. The parties in this suit have had a full settlement of the matters in controversy. A full receipt and discharge has been given and accepted, and the court will not go behind

it.  If both parties acted in good faith, and there was no undue concealment of facts—if *both* were *ignorant* of the facts, a court of equity will not interpose between them. The instances of mere mistake of facts upon which a court of equity will *actively* relieve, arise where the party applying on that ground was *alone* under a mistake at the time of the transaction.  If the mistake is *mutual*, no relief will be given.  Jere. Eq., Book III., p. 366; Fonb. Eq., Book 1, ch. 2, sec. 7; Story's Eq., sec. 150–51; 4 Johns. Ch., 566; 1 Bro. Ch. Cases, 158; 3 Swanst., 476; 2 Ball & Bat., 171; 2 Bro. Ch. Cases, 420; 4 Pr. Ech., 135; 1 Vesey, p. 211; 2 Johns. Ch., 274; 2 Atk., 592; 2 Phillips, 338; 13 Penn., 371; 5 Met., 274; 9 Pick., 231; 1 Atk. Ch., 10.

If both parties are ignorant of the fact about which a mistake has occurred, a court of equity will not interfere between them.   Jere. Eq., 366; 2 Atk., 592.

In this last case it was held, " that after an agreement has entirely settled all differences between parties and their several rights, the hands of the court are *so tied up* that they will not enter upon a question which might have been decisive had there been no such settlement."   In the matter of settlement, the mere fact that one of the parties was in error as to the amount of benefit which he relinquished, cannot create an equity that will authorize the interposition of a court of equity.   Adams' Eq., 375–76; 5 Russ. Ch., 149; 2 Ball & B., 171; 6 Cl. & F., 911; 3 B. Monroe, 510; 4 Dana, 309; 3 Swanst., 476; 9 Vesey, 23, note 3; 3 Bro. Ch. Cases, 453; 2 Cox, 134; 9 Ala., 663.

In this last case it was held by the Supreme Court of Alabama, "that although a contract is entered into under a mistake of law or fact, yet if it was made in good faith, each party possessing equal information, or equal means of acquiring knowledge, neither having practiced any unfairness or deception towards the other, a court of equity will not grant relief."

It is well settled that a mistake of fact will not vitiate a

LaTrobe vs. Hayward—Argument of Counsel.

compromise when it is common to both parties.   2 Strob. Eq., 250 ; 5 Humphrey, 259 ; 2 Sandford, 542 ; 4 Met., 271.

4. A mistake must be *clearly and strongly* proved, to authorize a court of equity to interfere.   It must be as conclusively proved as if the defendant had admitted it in his answer to complainant's bill.   Note to page 58, Fonblanque Equity ; 1 Johns. Ch., 252 ; 3 Bro. Ch. Cases, 452 ; 1 Story's Eq., sec. 181; 2 How., 702 ; Rice Eq., 275 ; 2 Myl. & Crg., 712 ; 4 Blackf., 432; 15 Vermont, 576 ; 10 Vermont, 452 ; 17 Vermont, 183 ; 11 Vermont, 138 ; 1 Maryland Ch. Decisions, 239 ; 2 do., 151 ; 4 do., 335.

5. Equity will refuse relief and its aid to those who by their own negligence have incurred the loss, or may suffer the inconvenience.   It gives relief only to the vigilant, and not to the negligent—not to those who have the means of acquiring information, have chosen to omit all inquiry which would have enabled them at once to correct the mistake, or to obviate all ill effects therefrom.   Story's Eq., sec. 146, and note ; Fonblanque Eq., Book I, ch. 3, sec. 3 ; 4 Johns. Ch., 566 ; 30 Maine, 266.

The facts, in relation to which the mistake is made, must not only be *material*, but such as the party could not have by reasonable diligence acquired the knowledge of, *when put upon enquiry*.   5 Hump., 529; Story's Eq., sec. 146 ; 4 Johns. Ch., 566; 30 Maine, 266 ; 4 Maryland Ch. Decisions, 335 ; 9 Vesey, p. 24.

The rule upon this subject is the same at law as in equity. 5 Maul. & Sel., 380 ; 12 East, 638.

6. If an agreement for the compromise of a cause is fairly made between parties, a court of equity will not overhaul it, although there has been a great mistake in the exercise of their judgment.

A compromise of disputed rights, both parties being *ignorant* of the true state of their rights, is valid, and will not be disturbed by a court of equity, whether the *ignorance* be of matters of law or fact.   5 Hump., 529; Story's Eq., sec.

149 ; 4 Dana, 309 ; 2 Ball & Bat., 171 ; 2 Atk., 592 ; 2 Rand., 442 ; White & Tudor's Eq. Cases, 265 ; 6 Munf., 406 ; 2 Bibb, 343 ; 1 Watts, 216 ; 6 Watts, 421 ; 1 Watts & Sarg., 445 ; 8 Watts & Sarg., 31 ; 5 Watts & Sarg., 111.

A compromise of doubtful rights will not be opened or rescinded, even when *unequal or harsh* in its operation. Compromises are *favored* in equity, whatever the nature of the controversy compromised, and they cannot be set aside because the events show *all the gain* to have been on one side, *all the sacrifice* on the other, *provided the parties acted with good faith.*

In the case of Moore vs. Fitzwater, 2 Rand. Rep., 442, Judge Cabell, in delivering the opinion of the Supreme Court of Virginia, said : "It is sufficient that the parties themselves have settled the question ; and, as there was no fraud or undue advantage, we would not disturb it, even if assured the appellee had no title."

When the uncertainty, either of the *facts* or the *law*, is present to the parties' minds, and they intend to settle their rights, whatever they may be—*i. e.*, knowing the *facts* to compromise the *law*, or being *doubtful* of the facts, to compromise *both fact and law*—there is no reason for setting aside the transaction, for it is based on the existence of a *doubt.* There is no *mistake* in what is done, and the mere fact that one of the parties was in error as to the amount of benefit which he relinquished, cannot create an equity for setting aside the settlement. Adams' Eq., 370 ; 3 B. Monroe, 510 ; 4 Dana, 309 ; 7 Paige, 560 ; 2 Paige, 478 ; 1 Sim. & Stuart, 566.

The evidence in this case shows most clearly there was a compromise made by the parties of the matter in dispute. The complainant Hayward went to Baltimore to see the respondent LaTrobe, in order to get a settlement. He exhibited to the respondent a letter he had received from his agent, stating a sum yet due to the complainant from the defendant. This sum was larger than the respondent

thought it ought to be, from the character of the work done. The complainant also demanded interest on the sum said to be due, which the respondent did not think he ought to pay. After long consultation and discussion between the parties, the defendant *agreed* and consented to pay the sum claimed to be due, and also *half-interest* on that sum.   This proposition of the respondent was accepted by the complainant, and he executed his note for the amount agreed upon, which note by agreement and consent was passed to H. R. W. Andrews, a creditor of the complainant, who was then present to receive it; and upon the transfer and delivery of this note to Andrews, in payment for lots of land, a receipt in full of all demands was given by the complainant to the respondent.   This receipt is made an exhibit in this case, and the attention of the court is respectfully called to its terms. It is not a receipt for so much money *alone*, but a receipt for a certain promissory note which when paid would be in full *settlement* of all claims against the respondents on account of the house and premises now the subject matter of this suit.   It would be difficult to make the terms of an acquittance more comprehensive and binding.   This receipt shows on its face, that it was the work of a compromise; its very language is irresistible proof of this fact.

No argument can be deduced (to aid the complainant's case,) from the fact that he now sets up a pretext, that he was *mistaken*, and *misunderstood*, and *misconstrued* the " *term alterations*," used in the letter of his agent.   The proof furnished by the complainant shows that the construction to be given to it was agreed upon by the parties after discussion and reflection; and without such agreement, the *compromise* would not have been accomplished.   They agreed to its meaning in order to effect a compromise; to come to a settlement in order to satisfy an urgent creditor of the complainant.

It is wholly immaterial whether the sum now claimed is for *alterations* or *additions*.   The respondent by his agree-

ment was to pay for the expense of completing the building; and this the complainant knew. The term "*alterations*," used in the agent's letter, was fully discussed by complainant and respondent, and its meaning agreed on, before the settlement and compromise took place; and it was upon this agreed construction the settlement between the parties was made; without such agreed construction no settlement would have been made, and it was to accomplish and effect a settlement, that a construction was agreed upon.

The complainant knew, (and upon this point there could be no mistake,) that by the agreement and contract the respondent was to pay for the completion of the building. If he had a doubt of the true meaning of his agent's letter, and of the amount due from the respondent, he had the means of informing himself by applying to his agent. He did not apply, but urged upon the respondent a settlement upon the basis of the construction given by both parties to the meaning of the letter of complainant's agent, and the complainant executed to the respondent full and complete acquittance and discharge from all *claims* in regard to the subject matter of this suit.

When a party has thus acted with the means of information within his reach, and *peculiarly* within his power and control, and within the keeping and knowledge of his own agent, can a court of equity interpose to relieve him on the ground of *mistake?* See the case cited under the fifth proposition of this brief. In most of the cases where the courts of equity have interposed to reform written agreements, or to relieve parties on the ground of *mistake*, it will be found that the party in whose favor the mistake has occurred was himself complainant seeking the enforcement of a contract or agreement, and applying to the court for their specific execution. In such cases the courts of equity very properly say to them: "If you wish our aid, you must submit to do equity, and what shall be just and proper. You must re-

lieve the defendant from the hardships of the mistake that has occurred in the matter."

As before stated, the instances of mere mistake of facts upon which a court of equity will *actively relieve*, arise where the party applying on that ground was *alone* under mistake at the time of the transaction. If the mistake is *mutual*, no relief will be given. See upon this point the authorities cited under the third head in this brief. The reason for this rule in courts of equity is too obvious to require comment.

It cannot be pretended that in this case, the mistake (if any,) was not *mutual*. The evidence of the complainant shows, that when the parties met in Baltimore, there was *mutual* ignorance as to the amount that had been expended in the completion of the building. It is not pretended that the defendant was in the possession of any information which he withheld from the complainant, or that he used any *undue advantage*, or made any *concealment*, or did any other act that was not fair and unexceptionable. If in this case the respondent had paid a larger sum in the settlement and compromise than the completion of the buildings had cost, I do not think, on the proof in this case, that a court of equity would decree a refunding of the excess on the ground of *mistake*.

In this case the answer of the defendant sets forth that the complainant sought the defendant and *urged* upon him a settlement; that the sum paid in the settlement was that named by the complainant, and after hestitation, *consented* to by the defendant; that the settlement was full and final, and so intended by the parties, as shown by the receipt. This answer is *vaguely* in part contradicted by the testimony of the complainant, but not *so contradicted* as to amount to what is termed in chancery proceedings a *denial*. The rule in equity that requires two witnesses, or one witness with strong corroborating circumstances to outweigh the answer of a defendant, leaves the answer in this case in full force.

7. The distinction between *ignorance* and *mistake* is broad and well defined. If one shall act in *ignorance* of the true state of things, when he has the means of informing himself, a court of equity will not give relief. A party asking relief and the aid of a court of equity on'that ground, must show that he *could not have obtained the necessary information with due diligence.* 15 Bevan, 151; Adams' Eq., 373, note 1; 4 Johns. Ch., 566; 1 Eden, 64; 4 Maryland Ch. Decisions, 835; 9 Vesey, 23; Jeremy's Eq., 366; 2 Atk., 592; 2 Ball & B., 171; 1 Bro. Ch. Cases, 158.

The evidence in this case shows that the complainant did not make a mistake; his own testimony shows it. From his own showing it would seem that he acted in *ignorance* of the true state of things, when he had abundant means of informing himself by application to his own agent and correspondent. A court of equity can give him no relief from the consequences of his own act. See authorities above cited.

8. A bill for relief against a mistake in the settlement of accounts must *allege* the matter of mistake *specially*, and the allegation must be strictly proved. It must be as *conclusively proved* as if the respondent had *admitted* it in the answer. 1 Johns. Ch., 252; 6 Ala., 518.

It is insisted that the bill in this case does not allege the matter of mistake *specifically* and prove it.

It speaks of the complainant's *ignorance* of the true state of his accounts with the respondent, and of his settlement with respondent, in *ignorance* of his claims against the respondent, but it does not specially allege the matter of mistake and prove it. The answers of the respondent deny that there was a mistake, but distinctly allege that the settlement was made to accommodate the complainant, and at his solicitation, and insists that it was a *compromise* of the matters in dispute between the parties, and was intended to be final. This answer of the respondents is uncontradicted by the proofs in the case, and should be conclusive on the point.

9. The complainant, Hayward, not only sanctioned and consented, but bargained and stipulated with the respondent to pay H. R. W. Andrews for the lots of land, and he is now *estopped* from setting up any claim or title by way of *lien,* either equitable or otherwise, in order to defeat or encumber the purchase. The acts and declarations of the complainant at the time of the payment and settlement are inconsistent with the evidence he now offers, and the title or claim which he now sets up, and if allowed, is an injury and injustice to the respondent. 16 Maine, 146; 21 Maine, 137; 6 A. & E., 469.

In the case of Hatch vs. Kimball, 16 Maine, 146, it was held: If one pays to the holder of a mortgage the amount due thereon, and takes a deed of quit-claim, equity will hold the mortgage extinguished or outstanding, as the interest of the party paying the money may require. It is insisted on like principles of equity, that as LaTrobe paid for the lots the amount due on them for their purchase from Andrews, the *lien* of Hayward became extinguished, and that this would have been the case if the *lien* had been by mortgage, and not an equitable *lien,* which is not favored in equity.

*M. D. Papy* for Appellee.

When property in controversy is within the limits of the State, and the claimant resides abroad, the Chancery Court has an undeniable jurisdiction over the case. 3 Gill & John., 504; 1 J. J. Marsh., 474; 3 Dana, 544; 15 Mass., 357.

Jurisdiction is founded either upon the person being within the territory or upon the thing being within the territory. Story's Confl. Laws, p. 450, sec. 539; ib., sec. 551.

As to relief being granted upon the ground of mistake, the court will open settlements made by mistake, although receipts in full have passed, &c. 4 Desau., 122; 9 Conn., 406; and see 1 Story Eq., secs. 142, 152 and 155.

14

Money paid by mistake can be recovered back by bill in equity. 3 Monroe, 82.

A chancellor will correct mistakes made in settlements, and cancel notes executed in consequence. 6 J. J. Marsh., 501.

It is one of the most familiar duties of a court of equity to relieve against mistake, especially when it has been produced by the representations of the adverse party. 15 Peters, 271.

A clear mistake, in making partition and settlement of an estate, as to its liability for a supposed debt, is a ground for opening mutual releases executed by the parties, where it appears that the settlement was not a compromise or speculation; it makes no difference that it is uncertain whether the mistake was one of law or of fact. 1 Bailey's Eq., 343.

A receipt of payment, though there is no fraud, if obtained by mistake, does not bind. 25 Georgia, 546; 5 Arkansas, 558.

Where a party makes a misrepresentation of fact, upon the faith of which the other acts, it is immaterial in a court of equity whether he knew of its falsehood or made the assertion without knowing whether it were true or false. 15 Maine, 332.

WESTCOTT, J., delivered the opinion of the court.

The grounds upon which a reversal of the decree is prayed in this case, may be divided into two classes: First, those which go to the jurisdiction of the court; second, admitting the jurisdiction, those which deny the right to relief upon the facts as they appear from the pleadings and proofs. The questions made as to jurisdiction may be again divided into those which arise from the residence and citizenship of the parties, and those which relate to the subject matter of the suit, or which raise the question whether the matters set up in the bill are not cognizable in a court of law, rather than

.a court of equity.   The first ground (set up by way of plea,) is, " that the Circuit Court had no jurisdiction to hear and .determine the cause, because complainant and respondents were residents of the State of Maryland, and both complain- :ant and respondents resided in another and the same State— the State of Maryland—and were not within the jurisdiction .of the State of Florida and the Circuit Court of the Second .Judicial Circuit for the County of Leon at the commence- :ment of this suit."

If the proceedings are *in rem*—if there are equities arising :from contract or by operation of law, by virtue of which a :party is entitled to subject specific property, real or personal, to sale for the purpose of satisfying a debt, then the courts .of the State in which that property is situated have unques- tionably the jurisdiction to grant relief, and that both the :parties plaintiff and defendant are citizens of another and different State from that in which the property is situated .does not divest the jurisdiction.   Whenever it becomes ne- .cessary for the decree to act upon the thing, upon the par- :ticular property, the jurisdiction attaches to the thing, abides ·with it, and can only be brought into action by suit where ·the thing is.   4 Mon., 436.   With reference to State courts, it is also true that wherever a citizen of Florida could main- :tain a suit in the courts of Florida against a citizen of Mary- .land, there also could the citizen of Maryland maintain the ·same suit.

The relief prayed for in this case is for the sale of property .situate within the jurisdiction of the court, and the application ·of so much of the proceeds of sale as is necessary to satisfy an al- leged lien, and while the plaintiff admits that the courts of .chancery in this State would not have jurisdiction to make ·a decree for the simple establishment of a claim or demand in favor of·a citizen of Maryland against a citizen of Mary- :land, or like decrees, yet we see no necessity for examining ·in this case that question.   The decree sought, the relief :prayed here, is for the sale of specific property within the

jurisdiction, and if there are such equities set up in the bill and established by the proofs as entitle plaintiff to a sale of the property, that settles the question involved in this case.

The next objection to the jurisdiction, which, like the one just stated, involves a consideration of the facts, is, that if the plaintiff has any claim or demand, it is a claim or demand for work, and labor, and materials, for which he has a complete and adequate remedy at law.

This suit is based upon the following agreement :

*Memorandum of agreement between William R. Hayward and Letitia G. Holladay.*

The party of the first part agrees to sell to the party of the second part his lots, numbers 98 and 99, in the north addition of the city of Tallahassee, with the improvements now in course of erection thereon, on the following terms, viz : The lots are to be estimated at one thousand dollars, and the dwelling house and kitchen are to be completed by the said party of the first part, as heretofore contracted for by him, the front and back piazzas to the dwelling included.

The said party of the second part binds herself to pay to the said party of the first part the full cost of said dwelling-house and kitchen, as shall appear from bills rendered by him, with one thousand dollars as aforesaid for the lots, in two payments, one of twenty-five hundred dollars on the first day of July next, and the balance in twelve months from the date of this contract, with interest at eight per cent. per annum from the first day of July next.

Witness our hands and seals, this 20th day of March, 1861.

In presence of ⎫ Wm. R. Hayward,     [L. s.]
   W. K. Beard. ⎭ Letitia G. Holladay, [L. s.]

After Hayward had executed a deed for the lots and premises to Mrs. LaTrobe, under the impression that he had been paid all that was due him under this contract, he now claims that there was a mistake in the settlement ; that there was, in fact, a larger sum due than he received, and for the balance so alleged to be due he asks the court to subject the

property to sale, and to apply so much of the proceeds thereof as is necessary to settle this unpaid balance of the purchase money. By an examination of the contract, it will be found that there is no difference between the lots and the improvements to be constructed; the lots were to be estimated at one thousand dollars, and the improvements to be constructed at their actual cost, and the payments agreed to be made, and the payments actually made, were made generally under the contract, and there is nothing in the proofs to show that either party intended that any portion of any payment should go to extinguish the debt of LaTrobe and his wife to Hayward for the lots, but it was to go as a general payment upon the entire indebtedness, which entire indebtedness could not be ascertained until the work was completed. Two lots and contemplated improvements were agreed to be sold, and the full price was to be fixed at the actual cost of the improvements and an estimated value of the lots. If the settlement in this case was made under such circumstances as would require a court of equity to open it, then the ascertained balance stands as a balance of the purchase money due upon the sale of the real estate.

This is not a case where a party, having a title to and being in possession of land, employs another to furnish materials and construct a building thereon. Whatever may be the rule in such a case we need not inquire, for this is not that case. Here the party having the title to the land and the possession, and having contracted for certain improvements, agrees to sell the land and the contemplated improvements to another, and the amount to be paid is to be the actual cost of the improvements and a previously estimated value of the land. Hayward, in this case, did not furnish work, labor and materials for buildings to be constructed upon the land of Mrs. Holladay. He was improving his own real estate, his own property. The title was in him. He had done nothing more than agree to sell, upon certain terms, both the lots and improvements. Upon a sale of a

lot and improvements, we know of no principle of law which. restricts the vendor's lien, where there is a balance of purchase money due to the value of the soil exclusive of the improvements. What was here agreed to be sold was the soil and contemplated improvements completed—a precisely similar case in principle to any ordinary sale of improved real estate.

The next ground set up in the petition of appeal denying. the existence of any lien, and incidentally the jurisdiction of a court of equity, is, that " there was no vendor's lien, inasmuch as the proofs in the case show that the lots of land. upon which the building was erected were paid for by the defendant, Chas. H. LaTrobe, before the institution of this suit, and a deed was executed by the complainant to the defendant for said lots of land."

' This ground, as stated, must be taken to mean that La. Trobe *had paid Hayward* for the lots, and it depends entirely. upon the question as to whether there was any difference between the lots and improvements, and whether any payment. was made for the lots exclusively. The execution of the deed does not destroy the lien, as a matter of course. We do not propose to determine what the result would be in the event the parties had made a distinct payment for the lots,. for, as we have already seen, such was not the fact as between Hayward and LaTrobe. It would not, however, be doing justice to the argument of the appellant to dispose of this ground in this way, as in argument it assumed an entirely different aspect. It was insisted that there was nothing. due for the lots from Hayward to the party from whom he purchased them (Andrews,) as the note given in the settlement by LaTrobe to Hayward was by Hayward transferred. to Andrews in payment of the sum due Andrews for the lots.

The note given in the settlement between Hayward and LaTrobe purported to be for the last instalment " due upon the lots, with improvements thereon."

Neither in the bill nor answer is it stated that the note thus given by LaTrobe and wife was transferred by Hayward to Andrews in payment of a sum due Hayward to Andrews for the lots. All that appears upon the subject is a statement in the answer that, after the settlement by note, LaTrobe was asked by Hayward if he had any objection to the note being transferred to Andrews, " to whom complainant (Hayward) seemed to be indebted on an old account," and that no objection being made, the note was transferred. It is, however, stated in the deposition of Hayward, that he transferred the note to Andrews in part payment of the lots, and that he had never been called upon to take up the note. Without any reference, however, to the fact that no such matter is set up in the answer, it is plain that if any lien exists for the sum found to be due by the master *over and above the amount of this note*, the transfer of this note of LaTrobe to Andrews does not operate to destroy the lien for the sum due over and above the amount of the note.

If it had been an actual payment in cash, it would have operated only to destroy the lien to the extent it settled the debt upon which that lien was based. We might leave this question with this remark, but as this matter was insisted upon with considerable earnestness in argument, we deem it advisable to state with more accuracy the law applicable to the case, as it appears to us in this respect. The lien for the purchase money in a case of this character exists by virtue of two facts : first, an indebtedness of vendee to vendor; and, second, because that indebtedness represents the balance of the purchase money due upon a sale of real estate. At law the estate passes, but in equity the vendor retains a lien until the whole of the purchase money is paid, unless the estate has been impressed by some equity superior to the vendor's ; for instance, if it has become the subject of a *bona fide* purchase for value without notice.

Had Hayward retained the note in this case, it cannot be doubted that his lien, if it existed at all, existed for that sum ;

but having transferred the note to Andrews, who accepted it as a payment of an indebtedness due him, Hayward does not seek to subject the land to sale for any portion of La-Trobe and wife's debt to him which this note represented. What he claims is the balance of the indebtedness over and above that sum. Hayward's indebtedness to Andrews, who was his vendor, can in no manner be the measure of Hayward's lien as against LaTrobe, Hayward's vendee. Hayward may have sold it for twice what it cost him, and it would be strange indeed if Hayward's vendee could destroy his equity by paying Hayward's vendor a sum equal in amount to one-half of the purchase money which was due Hayward.

Whether the transfer of the note by Hayward to Andrews, or the sale to LaTrobe under the circumstances of this case, destroyed Andrew's lien to that extent upon the land in the hands of LaTrobe, is a question not raised here.

Andrews is no party, and we can say nothing of that question. It is plain that it did not affect Hayward's rights beyond the amount for which the note was given, and to that extent H., whether entitled to it or not, asks no relief.

Having disposed of these preliminary questions, it only remains to determine whether the settlement and receipt in full was executed under such circumstances as authorized the court to open it, and whether, being opened, there was anything due.

The parties made a final settlement of the matter of the purchase of this property under the agreement stated, and Hayward executed a receipt as follows:

"Received, Baltimore, Maryland, July 21, 1865, of C. H. LaTrobe and Letitia G. LaTrobe, one promissory note, dated July 1, 1865, and due July 1, 1866, for one thousand and ninety dollars, which, when paid, will be in full settlement of all claims against them on account of the house and premises situated in the north addition of the town of Tallahassee, State of Florida, numbers of the lots being 98 and 99, pur-

chased from me by said C. H. LaTrobe and Letitia G. La-
Trobe, and for which I hereby pledge myself to give them
a deed in fee.                    Wm. R. Hayward."

The bill seeks to open this receipt, it being alleged, first,
that the note was for an amount much less than was really
due ; second, that such result was not the intention of the
parties, and that the intention, which was to pay the amount
due or to approximate it very nearly, was not accomplished,
through a mistaken construction of a letter of the agent of
Hayward before the parties at the time of the settlement ;
and, third, that at the time the settlement was made, La-
Trobe incorrectly represented a material fact as being within
his knowledge, concerning which fact Hayward was entirely
ignorant ; that is to say, one of the questions necessary
to be considered, and actually considered in the settlement,
was the character and value of certain alterations made by
LaTrobe in the original plan of the building as contracted
for by Hayward ; that while in point of fact they were con-
siderable in amount, LaTrobe represented, or by his acts led
Hayward to believe that they did not amount to much, be-
ing, as he said, only arching a few doors, and some other
little things, not amounting to much, and that Hayward,
being entirely ignorant of the extent as well as the cost of
the alterations, was thus induced to close the matter and
settle.

The bill, in reference to the first point, sets up a distinct
sum as being due.    The answer alleges that the defendant
has no personal knowledge of the amounts paid for the house
by complainant, and neither admits nor denies that the sum
complainant claims he expended was expended.    It sets up
further, that unskilful, idle and ignorant workmen were em-
ployed by complainant, and that from this cause the cost
was enhanced.    To what extent, with reference to the sum
claimed over and above the amount of the receipt, is not
stated.    This answer, in so far as it is responsive to the bill,
amounts to neither a denial nor admission of the sum claimed

to be expended under the contract by complainant. The effect of it, therefore, is simply to put the plaintiff to the proof of the fact alleged in his bill. The allegation as to the employment of unskilful workmen is an affirmative allegation in opposition to the bill, and the defendant, where there is a replication in, as in this case, is as much bound to establish such allegations by independent testimony as the plaintiff is to sustain his bill. 2 Dan. Ch. Pr., 841.

The testimony in the case does not establish this allegation of the defendant. The account of the plaintiff for the actual cost is proved before and allowed by the master, to whose report there was no exception by the defendants, and the sum due at the date of the settlement is shown to be largely in excess of the sum for which the note was given and the settlement made. It is, therefore, the opinion of the court, that the note was given for an amount less than what was due, and that the real amount due was the sum found by the master.

The second essential fact is, that it *was the intention of the parties*, one to pay and the other to receive what was due, not in precise figures, perhaps, but at least to approximate the balance; in other words, it was LaTrobe's intention to pay the cost of construction, and Hayward's to receive the cost, and to carry out their original agreement in good faith, and that such intention was disappointed by a mistake. Neither party intended to take the chance of losing or making such a considerable sum as the difference turns out to be.

The bill sets forth that shortly after the execution of the agreement (March 20, 1861,) Hayward left the State of Florida, leaving his father his agent; that on account of the war he did not receive any information concerning his interests in Florida until July, 1865, when he received a letter from his agent setting forth the payments made by LaTrobe ($5,000,) and then went on to say, " he " (meaning the defendant, Charles H. LaTrobe,) " owes you " (meaning plain-

tiff) "for the lots, building of house, &c., and the alterations, which Mr. Ball estimates about $1,000;" that upon the receipt of this letter he sought LaTrobe, who was then in Baltimore, to have a settlement; that defendant stated "he had no idea what was the amount of the balance due from him;" to which plaintiff replied, that perhaps the letter received by him a few days before from his father might assist them ; that he then read the portion of the letter quoted above, and added that it seemed to him that the $1,000 mentioned therein might refer alone to the price of the alterations as estimated by Mr. Ball, the carpenter, which would of course leave unpaid still another $1,000 ; that defendant vehemently objected to this construction of the sentence ; said the $1,000 could not refer to the alterations; they, said he, "were only arching a few doors and some other little things, which could not amount to much ; to which your orator replied, well, I suppose it must mean the whole balance is only $1,000," and that upon this construction given by the defendant to the language of the letter, and finally concurred in by the plaintiff, a settlement was then and there made.

The answer admits that defendant was called upon by plaintiff in 1865, with this letter of his agent containing this sentence, and that the plaintiff construed it as stated in the bill ; that the defendant stated that this could not be the construction, as no such amount of extra work had been done ; that the plaintiff then asked him if he thought the $1,000 could mean the total balance due on the house, to which he (LaTrobe) replied that he thought $1,000 would cover the whole sum due according to the agreement.

The testimony of Hayward confirms the statements of the bill, and LaTrobe, in a letter of his in evidence, states that at the time of the settlement he thought that a balance of about $1,000 would square us (meaning the parties to these accounts) up. It is unnecessary to comment at length upon the admission of LaTrobe in his letter, and the admissions

of the answer construed with reference to the matter of the bill.

It is plain that the parties intended to settle, approximating the balance due, and that neither intended to risk the chance of such a loss as has occurred. The receipt was given under the mutual impression that it covered the sum due, and that that was meant by the letter of the agent. Plaintiff intended that he should get what he was entitled to, and LaTrobe assured him that he (LaTrobe) thought that $1,000 would cover the whole sum due according to the contract. It is the opinion of the court, therefore, that it was the intention of the parties to settle according to the original agreement, and the failure so to do was occasioned by a mistaken construction of a letter then before them.

When the general character of the transaction is considered, this view is strengthened. LaTrobe was to pay nothing more under the agreement than what it cost Hayward, who was simply building the house and paying for it with LaTrobe's consent ; Hayward was to make no profit. The alterations made in the original work and the extra work done by the carpenter, were done by LaTrobe's directions. Such is the charge in the bill and the proof sustains it. Under such circumstances it is not reasonable to presume that either of these parties seeking to do right would desire to do less than the agreement required. .

The third fact stated in the bill, which constitutes an essential ground for the relief prayed, is that at the time the settlement was made, LaTrobe incorrectly represented a material fact, necessary to be considered and actually considered in the settlement as being within his knowledge, concerning which fact Hayward was entirely ignorant, and upon which representation Hayward relied in the matter of settlement, LaTrobe having greater knowledge upon the subject. The bill sets up Hayward's ignorance of everything in reference to the construction of the house, so far as there were alterations or extra work, and that such alterations and

extra work were done under the directions of LaTrobe. The admissions of the answer and the proof fully establish this allegation.

The bill further sets up that Hayward, when he approached LaTrobe for a settlement, construed the letter properly, and the answer admits that such was Hayward's construction, its language being that the complainant construed the sentence to mean "that the defendants owed $1000 for extra work done on the said house at the instance of these defendants." The answer states further, that the defendant, LaTrobe, insisted at the settlement that this construction could not be correct; "whereupon complainant asked LaTrobe if he thought the $1000 could mean the total balance due on the house? to which he replied that he thought $1000 would cover the whole sum due according to the agreement," adding that he had no knowledge upon the subject and spoke only from his judgment as to the probability in this connection. The answer states that the complainant then asked him, if he would settle on the supposition that $1000 would close the business. This is what occurred between the parties according to the answer. The alleged addition to the effect that defendant had *no knowledge upon the subject*, is inconsistent with defendant's admissions in the answer, as he expressly states that he had knowledge of the work done, and of the manner in which it was done, and the proofs entirely negative this statement. The proofs show that LaTrobe knew everything about the alterations except the precise charge for them; he knew their character and extent. Besides, the evidence does not show that LaTrobe represented to Hayward that he had *no knowledge* upon the subject. The mistake was discovered by Hayward upon the receipt of his agent's next letter, and he wrote at once to LaTrobe advising him of it, asking a fair adjustment of the matter. Hayward in this letter calls LaTrobe's attention to the fact that LaTrobe at the settlement assured him that the $1000 could not refer to the al-

terations alone, for they were only some arches and little matters which could not have cost much, and Hayward in his testimony states that this was LaTrobe's representation, and LaTrobe in his answer to this letter of Hayward's says : " I thought the interpretation of the letter to the effect that a balance of about $1000 would square us, correct. You asked me if I thought the alterations could have covered $1000. I smiled at the idea ; it was impossible." Taking this in the connection in which it occurs, it is an act equivalent to an express declaration that the alterations could not amount to that sum. Hayward knew that LaTrobe was advised fully of the character and extent of the alterations, and LaTrobe knew that Hayward was not so advised, and such an act in response to the inquiry made amounted to more than an assurance that the alterations did not amount to that sum ; it expressed surprise that such a view should even be entertained by Hayward as a possibility.

The only remaining question as to this point of the case is whether the alterations were not considerable. An itemized account of the alterations amounting to about $1000, was proved before the master and allowed. There is no proof to establish the allegation in the answer that the work was done in an unskilful manner, or that the charges were greater in amount than they should have been. The master's report must therefore be accepted as showing the true balance due, as well as the correct sum for alterations.

We thus see that the case made by the bill, and all the essential facts upon which the prayer for relief is based, is fully made out, and the only remaining question is whether the case thus presented is one which justified the decree rendered.

The grounds upon which appellant prays a reversal of the decree not before considered, and which involve a consideration of the case as it appeared at the hearing, are as follows :

Fourth—Because the complainant, Hayward, and the res-

pondent, Charles H. LaTrobe, had a full settlement of the matters in controversy between them, and full receipt and acquittances were given and accepted by the parties, and the court erred in not deciding this settlement to be final.

Fifth—Because the parties had, before the institution of this suit, compromised, adjusted, and settled the matters in dispute between them, and full and final receipts had been given and accepted, and the court erred in going behind this compromise.

Sixth—Because if there was a mistake made in the settlement as to the facts upon which the settlement was made, it was a mistake of both parties, a mutual mistake, and the court erred in opening the settlement to correct such mistake.

Seventh—Because the pleadings and proofs in the case show the complainant acted in ignorance of the true state of things when he had the means of informing himself.

Eighth—Because the bill does not allege specially the matter of mistake and the proofs establish it.

Ninth—The court erred in not deciding the complainant Hayward estopped by his deed and receipts to LaTrobe from setting up any claim or demand against the lots of land named in the bill, or from setting aside the settlement made in this case.

In respect to the fourth and ninth grounds we have only to remark, that admitting the settlement, the receipt, and the deed therein alleged to exist, brings us no nearer to the solution of the question than we were before. The question whether such settlement and receipt were executed under such circumstances as require they should be opened, is still left undetermined. In respect to the fifth ground, we can only remark that the case is not one of compromise, in the sense and meaning of that term as used in the authorities, when stating the general principle that compromises of conflicting rights when unaccompanied by fraud are final. Compromise involves in most cases a difference between the

parties, a controversy based upon conflicting claims, and it involves in all cases the idea of concession, because no settlement in strict accordance with right can be called a compromise. Now, unless the bare relation of debtor and creditor, where there is no dispute or difference as to what is the contract of the parties or their purpose, necessitates a difference or controversy, then there is neither difference nor controversy here, and the only matter of concession made in this case was as to the interest, and that concession was distinct and independent from anything which occurred in reference to the principal amount for which the parties concluded to settle. The answer in this case admits that nothing was said of the interest until the principal sum was fixed, and that then at the request of the defendant, complainant consented to charge only half-interest. No consideration of interest entered into the matter of adjusting the principal sum due, and it cannot affect that question. So far as the parties expressed themselves, they disclosed a mutual intention to settle according to the agreement. They did not suppose they were acting in ignorance of rights or facts; they knew the provisions of the agreement which was the measure of their right, and they came to a settlement, each avowing an opinion and belief that what they did was in substantial conformity to the agreement. In this opinion they were in error, and the error was founded in mistake. We treat this branch of the case first, as though there was mutual and equal ignorance of the character and extent of the alterations, which defendant contends was the case, (although it was not,) to show that even in this aspect of the case there was no compromise.

The sixth ground is that the mistake made was a mistake of both parties, a mutual mistake. It is unnecessary to say anything more in reference to this ground than that the solitary fact of mutuality in the mistake is no sufficient answer, for there are a class of cases in which it is essential that " the mistake should be on both sides," (Adam's Equity, 71,)

and an examination of the cases will show that in almost all cases where there was a pure mistake, as distinct from an error in judgment as to values, and where relief has been granted otherwise than upon the ground of fraud, the mistake has been mutual.

The seventh ground is because the complainant acted in ignorance when he had the means of informing himself. Where a party, having the means of information within his reach, makes a contract in ignorance of the value of the subject matter of the contract, the general rule is unquestionably that a court of equity will not set aside the contract, re-estimate the value, and fix the amount to be paid at what is conceived to be the proper value.

In this class of cases, the party *knows he acted in ignorance, and, strictly speaking, there is no mistake.* What he loses, he has lost through culpable ignorance, not mistake. So also when a party contracts with another ignorantly, supposing that he acquires something of greater value than it afterwards turns out to be, a court of equity will not, upon this ground alone, permit him to receive the value which he ignorantly conceived he was getting under the contract. The case of Ainsley vs. Medleycott, 9 Ves., 23, cited to sustain the seventh ground, was a case of this kind. There, the party conceived ignorantly that four thousand pounds, secured under a certain settlement, was a sum of money; *but no such representation* having been made to him by the other party, the court held that because he was in error in his conception, and it afterwards turned out to be stock and not money, a court of equity would not give him a decree for money instead of stock.

There is no such general principle as that equity will give no relief because the party *acted* in ignorance, when he might have been informed. Everything depends on the character of the act in other respects. Suppose the act, though without knowledge, or an attempt to acquire it, is

15

induced by a false representation of one, having superior knowledge, occupying a confidential relation ?

The parties to this settlement, though really ignorant of the sum due as between them, acted, believing that they had full knowledge of it; the one believing that he was paying, and the other that he was receiving, the proper sum. This belief that they had full knowledge was an error, and that error was induced by a mistake in the construction of a sentence. No mistake of this kind could create an equity if this is the rule, for every mistake of the class which occurred in this case involves the belief upon the part of the parties that they had knowledge, and the existence of the fact of ignorance. If the parties in every such case sought information when they believed they had full information, and such information could be obtained, they would always acquire the information and could never make a mistake, because a party cannot knowingly make a mistake. If the parties in this case knew that the alterations cost $1,000, how could they have made the mistake in construing the letter ? When the act is of the character disclosed in the cases cited to sustain this ground, accompanying ignorance will not entitle the party to relief; but when the ignorance is of the character disclosed here, and the act is of the character disclosed in this case, we must apply the rule applicable to like cases, which rule we will declare after disposing of the remaining grounds set up in the petition of appeal, and in that connection the court will show the distinction between the cases cited by appellant and this case.

The remaining ground not considered is, " because the bill does not allege specially the matter of the mistake relied upon and the proofs establish it." We deem it entirely unnecessary in this connection to repeat the allegations of the bill in this respect. It does specially and particularly allege the mistake, and the answer admits it. The answer admits that the sentence referred to was in the letter, ad-

mits the construction given, and it is established beyond doubt that the construction so given was a mistaken one, and that the error in the settlement was the result of this mistake.

Having disposed of these matters set up in the petition of appeal, there is nothing further for our consideration, except the question whether the receipt was properly set aside and the settlement opened.

There are two aspects in which this matter has been presented by appellee.

First. In the aspect of mutual and equal ignorance of the additions and alterations made in the original plan of the house, the intention of the parties, and the error in the settlement resulting from the mistake in the construction of the sentence in the letter.

Second. In the aspect of a difference in the knowledge of the additions and alterations, of ignorance on the part of Hayward, of knowledge on the part of LaTrobe, the reliance placed in LaTrobe by Hayward on account of the superior knowledge, and the act of LaTrobe inducing and leading Hayward to believe that the alterations or additions could not amount to but little, and to accept LaTrobe's construction of the letter.

In the first aspect, it is contended that the mistake is clearly made out; that the intention of the parties is clearly established; and admitting (for the sake of argument) mutual and equal ignorance, it presents a case which a court of equity will relieve. In the second, it is contended that the act of LaTrobe in reference to the value of the alterations, a material fact in the settlement, and Hayward's acting under erroneous impressions induced by LaTrobe's conduct and declarations, presents, with the other facts independent of the mistake, a case which a court of equity will relieve.

It is the opinion of the court that in either aspect, the case is fully made out, and it is the further opinion of the

court that in each aspect a court of equity must open the settlement.

If the parties were mutually ignorant, then the case presented is one where, through a mutual mistake in the construction of a sentence in a letter, the parties failed to accomplish their true intention and design, viz : the one to receive, the other to pay substantially what was due under an antecedent written agreement. In such a case, for a court of equity to perpetuate the mistake, and to make one party lose and the other gain, would be little less than a court of equity making itself the instrument to perpetuate a wrong. As remarked by Mr. Story, (Story's Eq., 155,) a court of equity would be of little value if it must leave mutual mistakes, innocently made, to work intolerable mischief, contrary to the intention of the parties. It would be to allow an act originating in innocence to operate ultimately as a fraud by enabling the party who receives the benefit of the mistake to resist the claims of justice.

In the case of Corking vs. Pratt, (1 Ves., sr., 400,) there was an agreement between mother and daughter as to the distribution of the personal estate of the father. Upon the daughter's marriage, the agreement was consented to by her husband. Upon the death of the daughter, her husband, as administrator, brought a bill to set aside the agreement and to have the distributive share set aside. The master of the rolls set aside the agreement upon the ground that it appeared afterward that the personal estate amounted to much more. Says the master of the rolls, " the party will be permitted to come here to avail himself of that want of knowledge, not indeed in the case of a trifle, but some bounds must be set to it. The daughter would be entitled to five or six hundred dollars more, which is very material in such a sum as this and a ground for the court to set it right. The daughter did not act on a composition and to have ready money, but took this as her full share ; and if

it appears not so, the court cannot suffer the agreement to stand."

This case is much stronger and goes much further than the decree in the case now before the court. In Corking vs. Pratt, it was a voluntary agreement in which both parties conceived the daughter received what was her share. In this case, there was no independent consideration, and the parties conceived that they were settling according to their antecedent agreement, which fixed their rights. So far they are similar, but the difference in favor of this case is, that in Corking vs. Pratt, the daughter simply acted under a thorough misconception of the amount and the value of her right, (3 Bro. C. C., 376, note 1,) while in this case, this, in respect to the matter of alterations, was not only true, but that misconception was occasioned by a *mutual mistake of the parties*, not by a known ignorance of the one party Hayward. The daughter in Corking vs. Pratt knew she was acting in ignorance, but Hayward when he acted believed that he was acting, not in ignorance, but with a full knowledge of his rights, and that belief was the result of mutual mistake.

In the case of Hare vs. Beecher, 12 Simons, 396, R. Beecher executed a bond to secure an annuity of one hundred pounds to Mrs. Turton, and at the same time executed an assignment of a policy of insurance on M.'s life to certain parties to secure the payment of the annuity secured by the bond. M. died during the life of R. Beecher. Robert Beecher subsequently died, and his brother Richard took out administration, and was in arrears in paying the annuity to Mrs. T. She threatened suit. *Both parties being under the impression that the intestate during his life had, upon his death, received the money secured by the policy and appropriated it to his own use, came to a compromise.* Mrs. T. gave a full release to the administrator from all claims and demands in respect of the annuity for one hundred pounds *and the securities for the same.* It was subsequent-

ly discovered that the policy had been collected by the intestate and the funds deposited to the credit of the annuity with certain bankers.

The chancellor set aside the release and made the amount of the policy applicable to the annuity. Here, the mistake was mutual, the result of ignorance upon each side, and the matter is stated by the reporter to have been a compromise. This case, in the opinion of the court, is not so strong a case as the present one. If the parties had not only been ignorant, but in addition there had been a letter capable of the construction that the money had been appropriated by the decedent, and upon this construction the compromise had been arrived at, and such construction was a mistaken one, there would have been a greater similarity; but even then the intention to pay the full amount due would have been wanting, which is a material fact in this case. This case was decided in 1842.

In Barnett's Adm'r vs. Barnett, 6 J. J. Marshall, 500, the administrator made a settlement upon the supposition that his intestate had entered a credit on account of a particular demand, and the court held that when it was ascertained that the settlement had in relation thereto had been made under erroneous impressions as to payments entertained by both of the parties, the administrator would not be held to pay balances thus found erroneously against him.

In McCrae vs. Hollis, 4 Desau., 122, the court held that a court of equity will open settlements made in mistake, though receipts in full have been given and the note taken up, and will allow the larger sum established by evidence. In that case, there was a note for $291.15. In making the settlement, the calculation of the amount due on this note was endorsed on it, and it began with the sum of $191.15, instead of $291.15. Here was a pure mistake in transferring the amount of the note from its face to its back in making the calculation. This mistake disappointed the intention of the parties, and made one pay less than what was due.

What is the difference in principle between that case and this ? Here was a mistake in the construction of a sentence in a letter. They are both equally mistakes, disappointing the intention of the parties. They are mutual mistakes, and it would be as manifestly wrong to perpetuate the results of the mistake in the one case as the other. In such cases as these, if the mistake is not mutual, the transaction involves a fraud ; for if a party sits by expressing an intention to pay the full amount due, and encourages and sanctions what he knows to be a mistake upon the part of the other party, which results in his making a considerable sacrifice, it is a fraud.

In the case of Gist vs. Gist, 1 Bailey's Eq., 346, all the parties interested in an estate executed mutual releases, and came to a settlement upon the supposition that there was a debt due the State. It turned out subsequently that there was no debt due, and the settlement was opened upon the ground of mistake, the chancellor remarking that it was plain that the parties could not have contemplated the chance of such an event as this.

The principle announced by the High Court of Chancery of Maryland, in Hall and Gill vs. Claggett, 2 Maryland, Chancery Decisions, 152, is applicable to this case. In that case a settlement was alleged not to conform to an agreement upon which it was based, and that this was the result of mistake, and the court say, that in the event the mistake was established, the settlement would have been opened and made to conform to the agreement.

In 9 Conn., 406, Fuller vs. Crittenden, the parties had agreed that the expenses incurred in obtaining a mail contract should be paid. They had a settlement, and a receipt in full was given. It subsequently appeared that there were other expenses, and the court held, that the receipt having been given by mistake, the plaintiff was entitled to recover the other expenses not embraced in the receipt.

Mr. Story (§ 151) remarks, that the general ground upon

which all the distinctions proceed in cases of mistake is, that mistake of facts in parties is a proper subject of relief only when it constitutes a material ingredient in the contract of the parties, and disappoints their intention by a mutual error.

In this case it is clear that the matter in connection with which the mistake occurred, the alterations, constituted a material ingredient in the settlement made, and the intention of the parties was disappointed by a mutual mistake.

A plaintiff, alleging a mistake in a settlement or contract, made in conformity to an antecedent agreement, where the evidence of the antecedent agreement is not in writing, will find it difficult to prove the mistake where the answer is responsive and in denial. For this reason, relief under such circumstances is seldom obtained. There is less difficulty in reforming written instruments where the mistake is plainly made out by other preliminary written instruments or memorandums of agreement, and where it is plainly made out that the parties meant, in their final instrument, to carry into effect the antecedent articles. Story's Eq., 160. The receipt given and the settlement made here was intended to be in strict conformity to the rights of the parties under the original agreement of sale, and the mistake is clearly established.

An examination of the principal authorities relied upon by the appellant, will show that the disposition made of this case is not in conflict with them.

In the case of O'Keil vs. Whitaker, 2 Phillips, 338, the premises were sold for the residue of a term of which both parties at the time supposed that eight years only were unexpired, and the price was fixed on that supposition. It afterwards appeared that twenty years were in fact unexpired at the time of the sale. A bill by the vendor to make the purchaser a trustee of the term for the twelve additional years was dismissed. Upon a careful examination of this case, it will be found that the bill was dismissed as much, if

not more, on account of the character of relief prayed, and the structure of the bill, than upon a general denial of its equity. In dismissing the bill, the chancellor remarked: "It is impossible *upon this bill* to give any relief. The plaintiffs do not ask to rescind the transaction altogether, nor could they, for after ten years' occupation and expectation of the benefit of renewal, it would be impossible to restore the purchaser to his original situation. What they say is, that the contract was improperly executed, and they ask that what remains of the term after expiration of the eight years may be re-assigned. But what is that but to call upon this court to decree specific performance of a contract with a variation. I cannot distinguished such a case from that of a bill to compel specific performance with a variation, for the object of the bill is either to make the purchaser pay more, or to make him a trustee of the rest of the term." This case was disposed of, we thus see, upon the ground that a court of equity would not compel a specific performance with a variation, and the relief could not be granted with justice to the purchaser of the lease-hold interest. It is not seen how the purchaser could be made to pay more, nor how he could be made to assume the responsibilities of a trustee.

But this doctrine, that a specific performance of a contract with a variation will not be decreed, does not obtain in the American Courts to the extent it has in the English Courts. Adams' Eq., 384. Mr. Story (Story's Eq., 161) says, in reference to these cases in the English Courts, that it is extremely difficult to perceive the principle upon which such decisions can be supported consistently with the acknowledged exercise of jurisdiction in the court to reform written contracts, and to decree relief thereon; and Chancellor Kent has not hesitated to reform an agreement by parol evidence and to decree a performance, as thus varied from the written agreement. 2 Johns. Chy., 585. But, however this may be, it cannot affect this case. The effect

of the decree in this case is not to decree a specific perform-ance with a variation. It sets aside a receipt in full, founded in mistake. It opens the settlement, and in effect decrees specific performance of an antecedent agreement according to its strict terms, which agreement the parties intended to perform by the settlement, but by mistake failed to do so.

In the case of Burt vs. Barlow, 3 Brown Chy. Cas., 452, bond given for a certain sum, which was calculated to be the amount of a residue of personal estate, it turns out the sum is miscalculated. The bill to have the bond considered as a security only for the real sum dismissed. The Lord Chancellor, in disposing of this case, remarks: "You have no *distinct evidence of the mistake;* had the party acted upon the idea of a general speculation, and you had offered to show what the intention of the party was, perhaps such a bond as this might have been rectified." To understand this language, it must be construed with reference to the facts of the case. The parties, before the bond was given, being equally advised of the situation of the estate, and of their rights, made a calculation and estimate of its value, and having computed the part of the real estate coming to the obligee, the bond was executed for what was computed to be the fourth part of the personal debt. It turned out afterwards that the proportionate part of the real estate coming was not so much as it was computed. The evidence of mistake was, that the obligor in the bond had received only two hundred and eighty-five pounds, while the bond was for six hundred pounds. The Lord Chancellor remarked that this was no distinct evidence of mistake. This was a case of compromise; at the time neither party knew what the personal estate would amount to; it was a matter of doubt, and a compromise was made. This is the view Mr. Story takes of this case, (1 Story Eq., 125, note,) and a care-ful examination shows it to be the correct view. We can-not see that there was any mistake here, unless a pure error in judgment as to value is to be called a mistake. It is ap-

parent from the language of the chancellor, that he regarded the case as one of compromise, for he intimates that if the party had acted upon the idea of a general speculation, and there had been evidence to show what the intention of the party was, then the bond might have been rectified. It is evident that the intention of the parties in this case was to settle upon their judgment as to values, and risk differences between the value of the real and personal estate. Had it been intended by both parties, that the bond should cover the sum without any risk of considerable loss, and had this purpose and intention been defeated by a mistaken construction of a sentence in a letter before the parties, we would have a case somewhat analogous to one of the aspects in which we have considered this case, such a case, indeed a stronger case, than the one in which the chancellor intimates the party would have been entitled to relief.

In the case of Ainsley vs. Medleycott, 9 Vesey, 24, the plaintiff asked no relief upon the ground of mistake. He proceeded upon the ground of an alleged representation made to him by the defendants, to the effect that a certain sum secured under a settlement was money. No such representation being proved, he was denied relief. The difference between this case and that is manifest. The remark there incidentally made by the chancellor, in reference to mistake, was unquestionably correct when viewed in reference to that case. The chancellor remarked, all the parties no doubt conceived the sum secured under the settlement was money, but it was not for him to say that the parties would have made any alteration if they had discovered the true situation of the fund. Their intention was to settle the fund as it stood, but they were all mistaken in the idea that it was money. This, he says, was a situation in which all parties, ignorantly and innocently, fell into mistake. How can I transfer the loss from one to the other without some distinct ground? The difference between the cases is manifest:

In 4 Johns., 566, the plaintiffs brought a suit at law against two persons as partners, and being unable to obtain satisfaction of their judgment, afterwards discovered that there were others who were dormant partners and asked a court of equity to grant relief against them. In 1 Brown's Ch. Cases, 158, there was a contract to sell an estate for an annuity for life and a certain sum of money. The party died before any payment occurred on the annuity. A specific performance of the agreement was decreed. Gordon vs. Gordon, 3 Swanston, 476, was a case where a family settlement was set aside because one party failed to disclose an important fact within his knowledge which operated to the interest of the relative with whom he was dealing. In 2 Bro., 420, a trustee having purchased at his own sale, realized by subsequent sale a higher price, was held a trustee for the sum produced by the second sale. In 1 Ves., 211, the case is not at all analogous. In 2 Johns. Chy., 274, the case failed for want of proof. The case of Pullen vs. Ready, 2 Atk., 592, was where all the parties knew the facts, and there was a mistake of law. We have examined with care all the cases cited which were within our reach, and they but strengthen our convictions already expressed in reference to this case. Many of the authorities cited by the appellant are cases where contracts are made by parties where there are no rights or obligations or confidences resulting from antecedent agreements, and where the parties meet for the first time to make a contract. As a matter of course, parties, under such circumstances, have a right to take all proper advantage of superior knowledge, and a court of equity will not correct pure errors in judgment as to values resulting from ignorance and like causes.

In reference to the other aspect in which this case has been presented, the authorities do not vary. LaTrobe, at the time of this settlement, knew everything in reference to the matter of additions and alterations, except the precise sum due therefor. He superintended the construction of the house.

Hayward was entirely ignorant, and it is clear from the proofs and the admissions in the answer, that Hayward did not accede to LaTrobe's construction of the letter until La-Trobe's acts induced the belief that the alterations amounted to but little.    From the proofs, it is plain that this was incorrect; that it was a material matter in the settlement, and that Hayward was ignorant, and LaTrobe possessed the information stated.    From the circumstances of the case, H. would naturally rely upon any representation by LaTrobe. The rule is, that if a party undertake to make a direct representation as to a fact, even though he be mistaken as to the fact, if the other party is induced to act upon such representation, equity will relieve against the act equally as if it had been a wilful and false assertion, for the injury is the same. 1 Mar. Ch. Decisions, 496 ; 6 Gill & Johns., 54.    The act of LaTrobe here was more than equivalent to such a representation.

Actual fraud is not necessary, in a case of this character, to entitle the party to relief.    It is not necessary that it should have been LaTrobe's purpose to get the property, omitting the cost of the alterations and extra work which he had caused to be done, in order to open the settlement.

We do not doubt that LaTrobe did not know the precise cost of the work, and his acts and language at the time of the settlement may have been the result of inadvertence. But this makes no difference.    It is against conscience for the defendant, who led plaintiff into error by his acts and language, inducing Hayward, who relied upon them, to conclude that the alterations amounted to but little, and not to the sum which the proofs in the case establish, to insist on the fruits of the receipt in full, and this would be true under the circumstances of this case, even in the absence of the mistake of the parties in the construction of the letter of the agent.    18 Wend., 421.

If the case was reversed—if, in fact, there were no alterations, and Hayward, who had knowledge, (or if he had no

knowledge,) so acted as to induce the belief on the part of LaTrobe that there were large alterations, and LaTrobe, who was ignorant, made a settlement or accepted Hayward's construction of the letter, and made a payment of one thousand dollars for alterations alone, would a court of equity hesitate to grant relief? We think not.

The effect of the decree in this case is to direct a sale of the premises, and an application of so much of the proceeds as is necessary to pay the plaintiff's debt, permitting the deed of conveyance to stand. This is correct.

The decree is affirmed.