GENET AND OTHERS *against* TALLMADGE AND OTHERS.

EMMET AND OTHERS *against* GENET AND OTHERS.

The father of infant children, who has been appointed their *guardian* by this court, is entitled to receive their *distributive shares* coming to them from their grandfather's estate, on giving the requisite security; but where one of the *sureties*, before given by the guardian, had become insolvent, the court refused to order moneys belonging to the infants, and which had been paid into court by the administrator, to be paid over to the guardian, until other and further security had been given by him.

A *guardian* has no power or control over the *real* estate of his ward, further than concerns the *rents* and *profits*.

Where certain *commissioners*, appointed to make partition of the *real estate* of an intestate, pursuant to an act of the legislature, sold parts of the estate, and paid the proceeds into this court, pursuant to an order for that purpose, and which had been invested in public stocks, by the assistant register, the court refused, on the petition of the guardian, to order the money paid over, or the stocks transferred, to him.

IN the *first* of these causes, the petition of *E. C. Genet* stated, that, pursuant to an order in this cause, of the 21st of *October* instant, the defendant, *M. B. Tallmadge*, as administrator of *George Clinton*, deceased, had deposited in court 6,338 dollars and 37 cents, in cash, a promissory note, several certificates of stock, and a power of attorney, as mentioned in the order; that the money, &c. belong to the plaintiffs, as part of the *distributive share* coming to them from the estate of *George Clinton*, deceased; that the petitioner is guardian of the persons and estates of the plaintiffs, his children, and is desirous to recover the said moneys and stock, &c. as guardian, &c.; and he prayed accordingly, offering to give such further security as might be deemed fit and proper.

The *order* of the 21st of *October*, referred to in the petition, stated, that, on reading and filing the consent, signed by the solicitor and counsel of the plaintiffs and defendants, it

was ordered, that *M. B. Tallmadge* deposit with the assistant register, the moneys in his hands belonging to the plaintiffs, as part of their *distributive* share of the estate of *George Clinton,* deceased, and also a promissory note given by *E. C. Genet,* to *M. Tallmadge,* or bearer, *dated* the 21st of *July,* 1815, for 1,182 dollars and .42 cents, and to be deposited as so much cash belonging to the plaintiffs; and, also, several certificates of stock belonging to the plaintiffs, as part of their distributive share aforesaid, to wit; (specifying the number of shares, and different kinds of stock;) and, also, a power of attorney, authorizing the assistant register to transfer to the said guardian twelve shares of stock in the *Highland Turnpike Company,* belonging to the plaintiffs, as part of their distributive share, and that such deposit be subject to the order of this court.

To the petition was subjoined a certificate of the assistant register, that all these deposits had been made, pursuant to the order.

In the *second* of the above-mentioned causes, the *petition* of *E. C. Genet,* as guardian of the persons and estates of the defendants, his children, stated, that by an act of the legislature, passed 12th of *March,* 1813, the plaintiffs were appointed commissioners to make partition of the real estate of *George Clinton,* deceased; and that, by another act, passed the 6th of *April,* 1814, they were authorized to sell any portion of the estate not fit for partition, and to divide the proceeds among the heirs, &c. That the plaintiffs have lately filed their bill, stating that they had sold parts of the said real estate; and that the proceeds, to which the defendants are entitled as heirs, were 6,878 dollars and 67 cents. That, pursuant to an order of the 13th of *October,* instant, the said sum has been deposited in court. That the petitioner is guardian of the persons and estates of the infants, and asks for the said moneys as guardian, or for the stock to be transferred to him, if invested, &c.

Prayer accordingly, with an offer to give such further security as may be requisite.

The *order* referred to stated, that the plaintiffs filed their bill on the 16th of *August*, 1815, and which stated the two acts aforesaid, and that, in pursuance of them, certain parts of the real estate had been sold with consent of the heirs; that *Elizabeth Tallmadge*, wife of *M. B. Tallmadge*, *Maria Beekman*, the wife of *Stephen D. Beekman*, *George W. Clinton*, and the *above five defendants*, were the heirs of *George Clinton*, deceased, and that the defendants were entitled to 6,878 dollars and 67 cents, as a fourth of the proceeds of the sales, after deducting costs and charges, &c.; that the plaintiffs are embarrassed to know to whom to pay the proceeds aforesaid; that the guardian of the defendants never gave security with reference to any thing more than the rents and profits of the real estate; that no appearance had been entered to the bill; that the plaintiffs had prayed for leave to pay the said proceeds into court, and that the same might be vested in public securities, or otherwise disposed of, as the court might think proper, and that the commissioners may be ordered to account, from time to time, with the proper officer, and, from time to time, to pay over to the proper officer moneys which may hereafter arise from their trust; and it was thereupon ordered, that the plaintiffs pay over the proceeds to the assistant register, and that the assistant register invest the same in public stock of the *United States*, for the benefit of the infants, and the commissioners were ordered to pay the proceeds of future sales to the assistant register, and he to invest the same as aforesaid; and that the commissioners might account with a master for moneys which might come to their hands as commissioners, and to deposit the balance, as aforesaid, to be invested, as aforesaid.

There *was a* certificate of the assistant register of the deposit of the 6,886 dollars and 85 cents.

The Chancellor. The petition relating to the proceeds of the distributive share of the personal estate of *George Clinton*, deceased, ought to be granted, on further

1815.

Genet
v.
Tallmadge.

1815.

GENET
v.
TALLMADGE.

*Ante, p. 3. S. C.

security being given so as to cover those proceeds. I have had occasion,* already, to observe, on the subject of this very estate, that the guardian was the proper person to be intrusted with these proceeds, on giving the requisite security. But it is a fact of public notoriety, for it has been declared by one of the former sureties himself, in the public prints, that there has been a failure of one of the sureties already taken, and who stood bound in the sum of 13,500 dollars for the guardian's fidelity. I must, therefore, require the deficiency of that security to be supplied, as well as the further security to be given, before I can permit any more moneys belonging to the infants to pass into the guardian's hands.

But, in respect to the other petition, in which the guardian asks for the proceeds of the real estate of the infants, sold by the commissioners, the claim stands upon very different grounds. It is not the general policy of the law that any guardian should have it in his power, under any circumstances, to dissipate the real estate of his ward. The law never allows him any further control than over the rents and profits. The act of the 24th of *March*, 1815, authorizing the Chancellor to direct, in certain cases, a sale of the real estate of infants, has taken special care that the investment and disposition of those proceeds shall be under the direction of this court, so as to secure the same to the infant. The private act under which the commissioners sold, in the present case, has not made any specific provision touching the proceeds, except, generally, that they should be divided among the heirs according to their respective rights and interests therein. As far, then, as the interest of the minors is concerned, the disposition of the proceeds necessarily devolves upon this court; and the most prudent course is to follow the provision of the other act, and to make some order, under the control and discretion of this court, in respect to the disposition and investment of these proceeds. It is well understood, that the moneys, which are the object of this

petition, are not wanted for the immediate education and maintenance of the infants, and the investment of them in public stock, drawing a punctual and certain interest, and capable, at any time, of being converted into cash, appears to be as safe and judicious an investment as could at present be made. I see no good reason why these moneys should not remain subject to the investment already prescribed by the order of the court, and the petitioner has not suggested any other advantageous disposition of them.

I shall, accordingly, deny the prayer of this last petition, and make the following order in respect to the first:

"ORDERED, that it be referred to one of the masters of this court, residing in the city of *New-York*, to inquire, ascertain and report the market value, in cash, of the *Manhattan Company* stock, and *Phœnix Insurance* stock, and of the nominal value or amount on the face of the *Turnpike* stock, mentioned or referred to in the above petition ; and that he further ascertain and report, on the application of the above petitioner, what person or persons would, in the judgment of the master, be competent security, and who are willing to be security, by a bond in the penalty of such sum as 15,000 dollars, and the stock so ascertained as aforesaid shall jointly amount to ; and with the usual condition for the faithful performance, by the petitioner, as guardian to his infant children, of his said trust, and to account when required. And that the said master further inquire, ascertain, and report, on the like application, on the competency of further security to be offered by the petitioner for the like purpose, in the penalty of 13,500 dollars, to supply and meet the deficiency of the former security, heretofore given by the petitioner to that amount, and which hath since proved to be insolvent; and that he report with all convenient speed ; and all further directions are reserved until the coming in of that report."

N. B. The security being offered, and its amount and

competency ascertained by *Jeremiah I. Drake,* the master, it was *ordered,* on the 8th of *November,* 1815, that, on filing the bonds, &c., the proceeds of the distributive share of the personal estate, as in the petition first mentioned, be paid to *E. C. Genet,* the guardian.