JAMES CARR, Respondent, v. LEWIS COAL COMPANY, Appellant.

May 27, 1884.

1. EQUITY — LIS PENDENS — PERSONALTY. — The doctrine of *lis pendens* applies to personalty except negotiable paper and ordinary articles of commerce sold in the usual way. *Semble* that it applies to a steamboat.

2. —— The doctrine can not be applied to purchases in good faith, where it does not appear that the property was within the jurisdiction at the time of, and since, the sale.

3. —— DECREE — JURISDICTION. — Personalty having been bought pending litigation and without actual notice to the purchaser of the *lis pendens*, the sale made by the vendor to avoid the decree may be set aside, but the court can not give judgment against the innocent purchaser for the amount of the original judgment to which it is sought to subject the personalty in question.

APPEAL from the St. Louis Circuit Court, BARCLAY, J. *Reversed and remanded.*

GIVEN CAMPBELL and JOSEPH DICKSON, for the appellant: In the absence of actual notice of the pendency of the suit the *lis pendens* did not affect the appellant with notice. — *Murray* v. *Ballou*, 1 Johns. Ch. 566 ; *Murray* v. *Lylburn*, 2

Johns. 441; *Warner* v. *Marcy*, 97 U. S. 106. The doctrine of *lis pendens* does not apply to personalty. — *McLaurine* v. *Monroe*, 30 Mo. 464; *Bank* v. *Smith*, 7 Wall. 646; *Aldrich* v. *Insurance Co.*, 8 Wall. 491. There could be no judgment *in personam* against the appellant.

H. D. WOOD, with whom is JAMES TAUSSIG, for the respondent : The doctrine of *lis pendens* applies to every description of property, whether real or personal, except negotiable notes not past due, and bonds, where the specific thing can be pointed out, so as to warn the whole world that they meddle with it at their peril. This doctrine of *lis pendens* is not based upon presumptions of notice, but upon a public policy, imperatively demanded to give effect to the proceedings of courts of justice. " It may be conceded, at this day, *lis pendens* applies with equal force to controversies in regard to personal property."— Freem. on Judg., par. 191–194; *Buford* v. *N. L. Packet Co.*, 3 Mo. App. 159; *Boling* v. *Carter*, 9 Ala. 921; *Lewis* v. *Mew*, 1 Strobh. Eq. 182; *Scott* v. *McMillen*, 1 Litt. 309; *Edgell* v. *Haywood*, 3 Atk. *357; *Watson* v. *Wilson*, 2 Dana (Ky.), 408; *Thones* v. *Southard*, 2 Dana, 480; *Scudder* v. *Van Amburg*, 4 Edw. (Ky.), 29; *Newman* v. *Chapman*, 2 Rand. 93; *McCutchin* v. *Miller*, 31 Miss. 88; *Tyler* v. *Hyde*, 2 Blatchf. 308; *Tabb* v. *Williams*, 4 Jones Eq. 352; *Fletcher* v. *Farrell*, 9 Dana, 376; *Diamond* v. *Lawrence County*, 37 Pa. St. 353; *Kellogg* v. *Fancher*, 23 Wis. 1; *McIlwrath* v. *Hollander*, 73 Mo. 112; *Wills* v. *Whitmore*, 9 Baxt. 198; *Dovey's Appeal*, 97 Pa. St. 153; *Kinderling* v. *Hartley*, 1 McCrary, 136; *McCauley* v. *Rogers*, 10 Bradf. 562.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding by a judgment creditor, in the nature of a supplemental bill to reach and subject to the satisfaction of the judgment a steam tug-boat sold *pendente lite*.

The cause was submitted upon the pleadings and an agreed statement of facts.

It appears that, in 1877, plaintiff obtained judgment in the St. Louis circuit court against one Thomas Parker, Sr., for $2,655, upon a note. The execution was levied upon the tug in controversy here, called the Alice Parker, as the property of Thomas Parker, Sr. Thomas Parker, Jr., interposed a claim to the boat, and plaintiff not being able to give an indemnification bond to the sheriff, the levy was released. Plaintiff filed his bill in the St. Louis circuit court against the Parkers, father and son, to set aside a conveyance of the tug from the father to the son, and to subject the tug to the payment of his judgment. This case will be found reported in 10 Missouri Appeals, at page 364, under the style of *Carr* v. *Parker*. It clearly appeared that the transfer from the father to the son was a bald and impudent fraud; and plaintiff obtained his decree on the 18th of February, 1880, that Thomas Parker, Jr., deliver the tug to the sheriff, who was directed to sell the boat and apply the proceeds to the payment of the judgment and the costs, etc. The sheriff made return to this writ, that Parker, Jr., refused to deliver the tug, saying that she was not in his possession or under his control. No bond had been given in this proceeding, and, though a restraining order was asked to enjoin the Parkers from disposing of the tug, none was granted until the final decree. Before this final decree, before the hearing, but after the commencement of this suit and service of summons, that is to say, on the 8th of January, 1880, the Lewis Coal Company, having no actual notice of these proceedings, bought the tug of Parker, Jr., for $5,800, her full value, and immediately took possession of her.

It is admitted that defendant is a corporation; but whether a domestic or foreign corporation does not appear, nor where defendants' place of business is. It does not appear where the tug was when sold to defendant, nor where she has been at any time since.

The court found the issues for plaintiff, and entered a

decree tnat plaintiff recover his costs of defendant; that the total amount of the judgment and costs in cases No. 47,734 and No. 49,832 (that is the original suit against Parker, Sr., and the creditor's bill against father and son), are a lien on the interest of the Lewis Coal Company in the tug boat Alice Parker, on the 6th of September, 1880; that the Lewis Coal Company forthwith deliver the boat to the sheriff; that the sheriff forthwith proceed to sell the same, for cash, in the manner provided for execution sales; that out of the proceeds, the sheriff pay the costs of this suit, and the costs of the cases, 47,734 and 49,832, and then pay to plaintiff his judgment in 47,734 with interest, and pay the remainder to the Lewis Coal Company. "And in the event said tug-boat be not delivered to said sheriff within five days after demand by him therefor of defendant pursuant to this decree, then defendant shall pay to said plaintiff the said amount of said judgment with interest and costs, in said cases numbered 43,743 and 49,832 of this court hereinbefore adjudged a lien against said tug-boat, and said sheriff shall thereupon proceed forthwith to collect the said amount thereof, as well as the costs of this suit, of said defendant, by levy upon the goods, chattels, and real estate of said defendant or otherwise, in conformity to law, in like manner as upon general *fieri facias;* and that plaintiff have execution and such other final process as may be necessary and proper to carry into full effect this decree."

What personal property is subject to the doctrine of *lis pendens*, does not seem to be yet definitely settled by any line of judicial decisions. The matter may be said to be *res integra* in Missouri. Long ago, in *McLaurine* v. *Monroe* (30 Mo. 369), Judge Scott remarked: "We said the *lis pendens* in Tennessee 'might' be notice to a purchaser of the slaves of the equity of complainants. The law in relation to the question whether movable personal property is subject to the doctrine of *lis pendens* does not appear to

be settled. There is certainly a leaning in the courts against its application to such property. As the parties have not referred to this question in their briefs, we will hazard no opinion in regard to it." And he cites the well known cases in 22 Alabama and 2 Johnson's Chancery, to which I shall hereafter refer.

It is well settled that there is at least one species of personal property — negotiable paper — to which the doctrine does not apply. But this exemption from the operation of the rule, arises from a peculiar quality which the law, for wise reasons, attaches to commercial paper in the hands of a *bona fide* holder for value before maturity. To apply the doctrine of *lis pendens* to such securities, would be to destroy one of the essential characteristics of negotiable paper (*Keiffer* v. *Ehler*, 18 Pa. St. 388), which unlike other property, as is remarked by Judge Laurie in the case just cited, carries its whole evidence of title upon its face. *County of Warren* v. *Marcey*, 97 U. S. 96; *Winston* v. *Westfeldt*, 22 Ala. 760.

In *Murray* v. *Lylburn* (2 Johns. Ch. 441), Chancellor Kent doubts whether the doctrine ought to be carried so far as to affect sales of movable property, such as horses, cattle, and grain, and Judge Bradley in *County of Warren* v. *Marcey* (*supra*), says that the doctrine is applicable to personalty, with the two exceptions of negotiable paper, and articles of ordinary commerce sold in the usual way. In New Hampshire, however, the courts refuse to apply the doctrine to personalty (*Chase* v. *Searles*, 54 N. H. 511); whilst in Mississippi, on the other hand, it is said that the doctrine at this day applies with equal force to contracts in regard to personalty and those concerning real estate. *McCutcheon* v. *Miller*, 31 Miss. 65. In Pennsylvania the doctrine is applied to non-negotiable securities. *Deaum* v. *Lawson Co.*, 37 Pa. St. 533.

So far as the reasons on which the rule itself is based go, they seem to apply with equal force to personal prop-

erty and real estate. The doctrine is an equitable one ; but in law the same effect is produced by the rule that the purchaser takes only the title of his vendor. Every man is supposed to be attentive to what passes in the superior courts of the sovereignty where he resides, and some courts have based the doctrine upon the theory of notice. But it would seem that the doctrine really rests upon the public policy which does not allow litigating parties to give to others, pending the litigation, rights to the property in dispute, so as to prejudice the opposite party. *Newman* v. *Chapman*, 2 Rand. 93 ; *Bellamy* v. *Sabine*, 1 De. G. & J. 566. It is well remarked by Mr. Freeman in his learned note to *Newman* v. *Chapman* (14 Am. Dec. 779) that, " the publicity of the judicial proceedings is the same in either case, and the danger of defeating the decrees of a court by the transfer of that to which they relate, is much greater in the case of movable property than in that of real estate. So that, for the protection of litigants, it would seem that even a still more rigid rule should be promulgated to prevent the disposal of personalty than of realty *pendente lite*. The arguments urged in support of the contrary view are drawn from the necessity of adopting no measures that would impair the freedom of commercial transactions, and of protecting *bona fide* purchasers of that of which possession is the chief *indicium* of ownership."

Indeed, the hardship of the doctrine as applied to real estate as settled in this country in harmony with *Newman* v. *Chapman*, that a *lis pendens* duly prosecuted, and not collusive, is notice to the purchaser so as to bind his interest by a decree of which he had not, and perhaps could not possibly have had, actual notice, has led to the enactment of statutes such as that in our own state, as to recording notice of actions involving title to realty ; and, where such statutes do not exist, the course of decisions seems to have been to confine, rather than to extend, the doctrine. But as was remarked by Chancellor Kent in the leading Amer-

ican case on the subject (*Murray* v. *Ballou*, 1 Johns. Ch. 556), the rule would never have been established if not founded on a great public utility; and, however it may work hardship in particular cases, the courts, so far as it is the rule are, bound to apply it; because the precedents are as controlling in equity as at law, and the chancellor has no dispensing power. We think that both reason and authority are for the conclusion that the doctrine of *lis pendens* is to be applied to personal property of the character in question in the present case, which is not an article of ordinary commerce as are cattle and grain.

We are aware of no statute of the United States, and there is none of the state of Missouri, requiring or authorizing the registration in the recorder of deeds office, or in the office of the collector of the port, or elsewhere, of notice of any suit concerning a steamboat; nor so far as we know, has any officer any power to record such notice. The legislation of congress as to the transfer of steamboat property (U. S. Rev. Stats., sect. 4192) does not in any way affect the applicability of the doctine of *lis pendens* to a river tug.

But whilst the doctrine of *lis pendens* is applied to personal as well as to real property, with the exceptions noted above, it has been felt that the doctrine that purchasers pending the suit are bound by a decree in an action to which they were not parties, and that they were not protected though they had paid full value and had no notice of the suit, was a harsh doctrine, justified only by the necessity of putting an end to litigation and preventing defendant from evading the decree. The doctrine had its origin in equity, but has never been a favorite with courts of equity. It has been closely confined within lines, when applied to purchasers in good faith, and they have been allowed the benefits of technical objections. The property must be exactly identified in the bill; the suit must be continuously and diligently prose-

cuted; the vendor must be a party at the time of the sale; the decree will not affect holders of equitable interests or contingent rights; taking judgment for the proceeds of the sale during suit, or the value of the property as for a conversion, is construed as a waiver; and the court to which the summons is returned must have complete jurisdiction of the property in dispute. *Carrington* v. *Brent*, 1 McL. 167; *s. c.* 9 Pet. 86; *Smith* v. *Brown*, 9 Leigh, 293; 17 Hun, 575; 27 Mo. 560; 7 Blackf. 242; Foublan, b. 2, ch. 6, sect. 3, note; 3 Atk. 392.

But whilst the rule is laid down that the court must have jurisdiction of the property, and that where this is the case, if a creditor files a bill in his own name and for his sole benefit, to set aside a fraudulent conveyance and .to have the property applied towards the satisfaction of his judgment, he acquires a specific lien by filing his bill and obtaining service; and that any person purchasing the property sought to be subjected to the claim is a purchaser *pendente lite;* and whilst we have no doubt that within the United States purchasers in one state pending suit in another must be treated as *pendente lite* purchasers, and subjected to the rule applicable to such purchasers, where the suit has been prosecuted with due diligence to a decree, process has been personally served on defendant, and the subject-matter of the controversy is within the jurisdiction of the court (*Fletcher* v. *Ferrell*, 9 Dana, 372), we do not see in the present case that the boat, which is the subject of the controversy, has been within the jurisdiction of the court at any time since her release by the sheriff, long before this action was brought.

From the nature of the property, there can be no presumption that she remained where the sheriff left her. She may not have been in the state of Missouri at the time of the purchase by defendants, or since. Under these circumstances we do not see how the circuit court could enforce a decree divesting title. But even if it could make such a

decree, we think it clear that it could make no decree against defendant for the amount of the original judgment against Parker, Sr., and interest. Indeed, so tender have chancellors shown themselves of the rights of the innocent purchaser during a *lis pendens*, that it is held that where the defendant is charged only with constructive notice, and there is no real fraud in the case, even though the purchase can not be permitted to stand, there is equity in not carrying the doctrine of notice or *lis pendens* so far as to charge him with costs. *Murray* v. *Ballou*, 1 Johns. Ch. 566.

For these reasons we think that the judgment should be reversed and the cause remanded. All the judges concur.