CARR, *Appellant,* v. THE LEWIS COAL COMPANY.

| 96 | 149 |
| 53a | 225 |
| 96 | 149 |
| 54a | 152 |
| 96 | 149 |
| 57a | 172 |
| 96 | 149 |
| 132 | 398 |
| 96 | 149 |
| 145 | 382 |
| 148 | 48 |
| 96 | 149 |
| 159 | 660 |
| 159 | 661 |

1. **Practice :** AGREED STATEMENT OF FACTS. A finding on an agreed statement of facts stands in lieu of a special verdict and the agreed facts must fully support the finding.

2. ——— : ———. Where the facts are ambiguous or there is an omission of a fact essential to a recovery, the finding will not be allowed to stand.

8.  **Jurisdiction**: SUBJECTING PROPERTY TO DECREE OF COURT. A suit to directly subject particular property to the judgment or decree of a court must be brought where the *res* is.

4.  **Lis Pendens**: TRANSFER OF PERSONAL PROPERTY. Where personal property of a movable nature is, pending litigation concerning it, withdrawn from the jurisdiction where the litigation is pending to another jurisdiction and there sold to a *bona-fide* purchaser, the doctrine of *lis pendens* will not affect such sale.

5.  **Semble**, that a steam tug belongs to that class of property which may be the basis of a *lis pendens*.

6.  **Personal Judgment**: PURCHASER PENDENTE LITE. A personal judgment cannot be rendered in favor of a plaintiff in a suit against a mere purchaser *pendente lite;* although such decree may be possibly authorized against a fraudulent grantee.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*H. D. Wood*, with *James Taussig*, for appellant.

(1) A purchase made of property actually in litigation, *pendente lite*, for a valuable consideration, and without any express or implied notice of the suit, affects the purchaser in the same manner as if he had notice; and he will be bound by the decree in the suit. The alienee comes before the court in exactly the same plight as the former party. Story Eq. Plead., pars. 353, 156, 342, 343; Milford & Ty. Plead. and Pr. [Ed. of 1876], 166, 172; 1 Story Eq. Jur. par. 405; Adams Eq. *409; *Hoxie v. Carr*, 1 Sumner, 173; *Turner v. Bobb*, 60 Mo. 347, 350; *O'Reilly v. Nicholson*, 45 Mo. 160; *Whiteside v. Hazelton*, 110 U. S. 296. (2) The doctrine of *lis pendens* applies to every description of property, whether real or personal, except negotiable notes not past due, and bonds, where the specific thing can be pointed out, so as to warn the whole world that they meddle with' it at their peril. The doctrine of *lis pendens* is not based upon presumptions of notice, but upon a public policy, imperatively demanded to give effect to the proceedings

Carr v. The Lewis Coal Company.

of courts of justice. "It may be conceded, at this day, *lis pendens* applies with equal force to controversies in regard to personal property." *McCauley v. Rogers*, 10 Brad. 562 ; Freeman on Judg. [3 Ed.] pars. 191, 192, 193, 194 ; *Buford v. Packet Co.*, 3 Mo. App. 159 ; s. c., affirmed, 69 Mo. 611 ; Bisph. Eq., par. 274 ; *Boling v. Carter*, 9 Ala. 921 ; *Lewis v. Mew*, 1 Strob. Eq. 182 ; *Scott v. McMillen*, 1 Littl. 309 ; *Edgell v. Haywood*, 3 Atky. *357 ; *Watson v. Wilson*, 2 Dana [Ky.] 480 ; *Thones v. Southard*, 2 Dana, 408 ; *Scudder v. Van Amburgh*, 4 Ed.wds. [Ky.] 29 ; 1 Story Eq., par. 406 ; *Newman v. Chapman*, 2 Rand. 93 ; *McCutchin v. Miller*, 31 Miss. 88 ; *Tyler v. Hyde*, 2 Blatchf. 308 ; *Tabb v. Williams*, 4 Jones Eq. 352 ; *Fletcher v. Farrell*, 9 Dana, 376. (3) The recording acts of the United States simply provide how certain conveyances of vessels shall be registered to make the transfer valid between the parties as to certain third persons. There is no statute which would require us to file a notice of this suit with the collector, and the collector has no power to record such a notice. Furthermore, there is nothing in the agreed case to make necessary any discussion of those statutes. (4) The state statute, requiring the filing of notices of suit in case of equitable actions affecting real estate, does not affect the equitable doctrine of *lis pendens* in regard to personal property. Nothing short of a direct, positive and prohibitory statute will oust a court of equity of a subject pertaining to its jurisdiction. Thus our partition statutes do not oust the equity jurisdiction of the courts in matters of partition. *Sav. Inst. v. Collonious*, 63 Mo. 290. See also as to equity jurisdiction : *Stewart v. Caldwell*, 54 Mo. 536 ; *Pratt v. Clark*, 57 Mo. 189. (5) If the *situs* of the property were material in an action brought against the fraudulent transferee thereof to set aside the conveyance, the presumption of law from the agreed facts is, that the boat was within the jurisdiction of the court. (6) It is immaterial whether the tug was within the jurisdiction

of the court. Courts of equity act *in personam* where the parties are within its jurisdiction, even though the property, whether real or personal, is in another state or nation. Pom. Eq. pars. 135, note 2, 428–1318 ; *Olney v. Eaton*, 66 Mo. 563 ; *Briggs v. French*, 1 Sumner, 504 ; *Massie v. Watts*, 6 Cranch, 157. It is remarkable that the case cited by the court of appeals (*Fletcher v. Ferrell*, 9 Dana, 372), in support of its proposition adverse to this point, was a case where a purchaser of slaves in Kentucky, pending a suit concerning them in Tennessee, was treated as a *pendente lite* purchaser. (7) We were entitled to the. alternative order that the defendant deliver the tug to the sheriff, or pay the amount of the judgment and costs. (*a*) When a court of equity acquires jurisdiction, it will proceed to complete justice between the parties, though it consists in awarding damages, and will grant any relief consistent with the issues sustained by the proof. *Ames v. Gilmore*, 59 Mo. 537 ; *Hamilton v. Hamilton*, 59 Mo. 232 ; *Lydick v. Holland*, 83 Mo. 707 ; *Savings Inst. v. Collonius*, 63 Mo. 290. (*b*) It is a well-established doctrine in equity that a decree for the amount of the creditor's judgment will be entered against the fraudulent transferee of property, where the value of the property thus transferred equals or exceeds said judgment. *Murtha v. Curley*, 90 N. Y. 372 ; *Ferguson v. Hillman*, 55 Wis. 181.

*Given Campbell* and *Joseph Dickson* for respondent.

(1) The court had no jurisdiction over the tug "Alice Parker," and its decree was ineffectual to change its *status*. (2) In the absence of actual notice of the pendency of the suit of Carr against the two Parkers, the *lis pendens* did not affect the Lewis Coal Company with such notice as to render its title to the tug subject to the right of plaintiff under the decree rendered in that suit. Arg. Chy. Cas. 151 ; *Sorrell*

Carr v. The Lewis Coal Company.

*v. Carpenter*, 2 P. Wms. 482 ; Benjamin on Sales [4 Am. Ed.] sec. 513 ; *County v. Marcey*, 97 U. S. 106 ; *Durant v. Iowa Co.*, 1 Woolworth, 69 ; *Laurral v. Monroe*, 30 Mo. 464 ; Wade on Notice, sec. 369. (3) The court had no authority to render a judgment *in personam* against the Lewis · Coal Company. Wade on Notice, sec. 375. The only effect of a *lis pendens* is to prevent a purchaser from acquiring an interest in the thing in litigation to the prejudice of the adverse party. *Marshall v. Shepperd*, 23 Kan. 321–326 ; *McCauley v. Rogers*, 104 Ill. 581 ; *Havens v. Adams*, 8 Allen, 363.

SHERWOOD, J.—In 1877, Carr brought suit in the St. Louis circuit court against Thomas Parker, Sr., upon a note, and recovered judgment. Execution was issued and levied upon the steam tug now in controversy, called the Alice Parker, as the property of Thomas Parker, Sr.; but Thos. Parker, Jr., in whose name the boat was fraudulently registered as owner, claimed the boat, and Carr, not being able to give an indemnification bond to the sheriff, the levy was released. This was in 1878, and the cause was numbered 43,734. In 1879, Carr filed his petition in said court against the Parkers to set aside the conveyance of the father to the son as fraudulent, and was successful, a decree, as prayed, being entered February 18, 1880. This cause was numbered 49,832.

Prior to the entering of this decree, however, and on January 8, 1880, the Lewis Coal Company, having no actual notice of the suit, bought the tug of Thos. Parker, Jr., paid him its full value, fifty-eight hundred dollars, in cash, and immediately took possession of her. Upon the entry of the decree aforesaid, an order was issued directing that defendant Thos. Parker, Jr., deliver the tug Alice Parker to the sheriff, and that upon receiving it, the sheriff sell the tug. The sheriff made return upon this order to the effect that Thos. Parker, Jr., refused to deliver the tug, saying it was

not in his possession or under his control. No bond was given in the proceeding, and although in the petition a restraining order was asked to enjoin the Parkers from disposing of the tug, none was granted until final decree. It is admitted that the Lewis Coal Company is a corporation ; but whether foreign or domestic, or where its place of business is, or at what place the tug was bought, or where it has been since, or was at the time the decree was entered, nowhere appears.

The present proceeding in the nature of a supplemental bill was instituted to reach and subject to the satisfaction of the judgment aforesaid, the steam tug as having been sold *pendente lite ;* and the Lewis Coal Company was made a party defendant; subsequently a dismissal was entered as to the Parkers. Upon the hearing of this last-named cause, the court found the issues for the plaintiff, and entered a decree against the Lewis Coal Company as follows : "That plaintiff recover his costs of defendant ; that the total amount of judgment and costs in cases number 43,734 and number 49,832 (that is the original suit against Parker, Sr., and the creditors' bill against father and son) are a lien on the interest of the Lewis Coal Company in the tug-boat Alice Parker, on the sixth of September, 1880 ; that the Lewis Coal Company forthwith deliver the boat to the sheriff ; that the sheriff forthwith proceed to sell the same, for cash, in the manner provided for execution sales ; that out of the proceeds the sheriff pay the costs of this suit, and the costs of the cases, 43,734 and 49,832, and then pay to plaintiff his judgment in 43,734 with interest, and pay the remainder to the Lewis Coal Company. And in the event said tug-boat be not delivered to said sheriff within five days after demand by him therefor of defendant pursuant to this decree, then defendant shall pay to said plaintiff the said amount of said judgment with interest and costs, in said cases numbered 43,734 and 49,832 of this

court hereinbefore adjudged a lien against said tug-boat, and said sheriff shall thereupon proceed forthwith to collect the said amount thereof, as well as the costs of this suit, of said defendant, by levy upon the goods, chattels and real estate of said defendant or otherwise, in conformity to law, in like manner as upon general *fieri facias ;* and that plaintiff have execution and such other final process as may be necessary and proper to carry into full effect this decree.''

This decree was reversed in the court of appeals (15 Mo. App. 551), and the plaintiff has appealed here. The judgment of reversal was based upon two grounds ; one as to jurisdiction, and the other as to the scope of and nature of the decree. As to the first : The agreed statement of facts in this cause, upon which it was determined, occupies the same footing and stands in lieu of a special verdict and the court pronounces its conclusions upon such agreed facts, precisely as if a jury had found a verdict in that form. Hence, if there be any ambiguity, any omission of facts necessary to a recovery, any lack of clearness and certainty on material points, the judgment cannot be allowed to stand. *Gage v. Gates,* 62 Mo. 412 ; *Mumford v. Wilson,* 15 Mo. 540 ; *Lecompte v. Wash,* 9 Mo. 547.

In this case, as before noted, it does not appear *where* the tug, the *res* which the plaintiff seeks to subject to the satisfaction of his judgment, was, when defendant bought it, nor where it was at the time the last decree was rendered. In other words, *no jurisdiction* of the court appears to have existed over the tug at the time of the entry of either of the decrees. As a general rule, to which this case forms no exception, it is needless to say that in order directly to subject particular property to the judgment or decree of any court, the suit brought for that purpose must be brought *where the thing is.* Wells on Jur., sec. 117 ; *Latrope v. Hayward,* 13 Fla. 190 ; *Austin v. Bodley,* 4 T. B. Mon. 434 ;

Story Confl. Laws, sec. 539 ; *Currington v. Brents*, 1 McL. 167.

If it be conceded, in accordance with the ruling of the lower court as well as that of the court of appeals, that the property in question is of that nature as would form the subject of a *lis pendens*, still it does not appear where the property was at the time it was sold to the defendant, nor at any time since. One of the bases suggested for the doctrine as to the force and effect of a pending suit, is that stated by an eminent writer : "For it is presumed that legal proceedings,' during their continuance, are publicly known throughout the *realm*." Adams Eq. 157. By this term realm is meant the *state* or *sovereignty* where the property is, as is explained in a note by the writer just cited, and the term "the *whole world*," he also explains as simply meaning "*all men in that jurisdiction or state*." The true basis of the doctrine of *lis pendens* is that of an imperious public policy and necessity which will not admit the judgments or decrees of courts to be frustrated or set at naught by transfers, which if sanctioned would render litigation interminable, and thus defeat the ends of justice. Freeman on Judgments, sec. 191, and cas. cit.; *Newman v. Chapman*, 2 Rand. 93 ; s. c., 14 Am. Dec. 766, and notes.

But a *lis pendens* should not have any force or operation beyond the boundaries of the state where the suit is pending. To thus extend its operation would certainly be giving the judgments and decrees of courts an extra-territorial effect, in violation of the familiar maxim : "*Extra-territorium jus dicenti impune non paretur*." Sto. Conf. Laws, sec. 539. "No sovereignty can extend its process beyond its territorial limits, to subject either persons or property to its judicial decisions. Every exertion of authority beyond this limit is a mere nullity, and incapable of binding such persons or property in any other tribunals." *Picquet v. Swan*, 5 Mason, 35, and cas. cit.

Carr v. The Lewis Coal Company.

If the *process itself* cannot be extended or be served beyond the territorial limits of the sovereignty whence issued, certainly, a *mere incident* of the service of such process as is a *lis pendens* can have no greater force or further-reaching operation. The principle of the rule being discussed is the prevention of the judgments and decrees of courts from being frustrated by transfers whilst matters are yet *in fieri*, and thus balking such judgments and decrees of their customary operation after they are rendered. But where can such obstructions be cast in the way of such adjudications? Obviously only in the sovereignty where the adjudications are had. If the property be eloigned, taken beyond the confines of the jurisdiction where litigation is in progress, to say that it shall bear with it, no matter where taken, the effects and consequences of previous litigation, and conclusively bind any purchaser however innocent of wrong, though the property has no history or ear-marks of litigious strife about it, would be carrying the doctrine of *lis pendens*, a harsh doctrine at best, and one not favored by the courts, as all the authorities agree, to a most extraordinary and pernicious length. These views find support in the case of *Shelton v. Johnson*, 4 Sneed, 672; s. c., 70 Am. Dec. 263. See also *Powell v. Williams*, 48 Am. Dec., *loc. cit.* 108; 1 Sto. Eq. Jur. [13 Ed.] sec. 405; *Thoms v. Southard*, 26 Am. Dec. 467.

Of course these remarks are limited to a case where personal property of a movable nature is, pending litigation concerning it, withdrawn from the jurisdiction where such litigation is pending to another state and there sold to a *bona-fide* purchaser. It is a very harsh presumption and rule which force the citizens, *within the same state*, to take notice at their peril of all matters being adjudicated within its borders, a rule only justified by imperative necessity; but to say its operation *shall be extended to every portion of the United States*, would be a very startling extension of a rule

already sufficiently odious and oppressive. *Ex gr.* :
Would it not be preposterous that a suit brought in a
territorial court of *Alaska*, to subject a ship to a lien,
should prevent the valid transfer of such ship when
subsequently found sailing off the coast of *Maine?* This
question furnishes its own answer.

Nor do I see that article 4, section 1, of the federal
constitution, as to full faith and credit, etc., being given
to the records and judicial proceedings, etc., has any
bearing upon the point whether a *lis pendens* in one
state shall have any extra-territorial effect. The obvious
meaning of that provision goes only to the operation
such records shall have when complete and subsequently
offered in evidence, as establishing that certain facts have
been adjudicated, and has no reference as to what shall
be the *incidental effect* of a suit which results in such
records being made.

As to whether the steam tug in question belongs to
that class of property which may be the basis of a *lis*
*pendens*, I incline to think that it does. This point
was so ruled as to a *steamboat* in *Thoms v. Southard*,
*supra*. Treating of this matter, a writer already cited
observes : "Every consideration of necessity and of
public policy which demands and justifies the law of
*lis pendens*, as applied to real estate, also demands and
justifies the application of the same law to personal
property. In fact, the ease with which personalty could
be transferred to parties having no notice of the litiga-
tion is much greater than in the case of real estate. The
probability of the defendant's entirely defeating the
object of the suit, by a transfer of the property
*pendente lite*, is rather greater in the case of personal
than of real estate, and the necessity of some law, pro-
hibiting such transfer, to the prejudice of the prevailing
party, is therefore greater in the former case than in the
latter. But the necessity of preserving the negotiable
character of negotiable paper, not due, so as to require

Carr v. The Lewis Coal Company.

no inquiry beyond inspection of the paper itself, in relation to its ownership, has properly been considered paramount to the necessity of avoiding transfers *pendente lite*, and that class of paper, therefore, is the only property not liable to be affected by the doctrine of *lis pendens.*" Freeman on Judgments, sec. 194 and cas. cit. And it is thought that section 4192, Revised Statutes of the United States, or its associate sections, as to the registry of vessels, has no effect on the doctrine just discussed.

Now as to whether the decree which the lower court entered was a correct one, conceding that court had jurisdiction over the *res* in controversy. Such decrees or judgments are possibly authorized against the fraudulent *donees* or *grantees* of property. *Murtha v. Curley*, 90 N. Y. 372; *Ferguson v. Hillman*, 55 Wis. 181; *Kramer v. McCaughey*, 11 Mo. App. 426; *Clements v. Moore*, 6 Wall. 312. But I find no sanction in the authorities for such a decree against a *mere purchaser pendente lite*, holding him liable to respond to the plaintiff in the action in a personal judgment. In *Murray v. Ballou*, 1 Johns. Ch. 565, the leading case on this subject, the chancellor, while he decreed that such a purchaser should pay the amount of the consideration which he was to pay for the land, yet declined to tax him with costs.

These considerations induce an affirmance of the judgment of the St. Louis court of appeals, and it is so ordered. RAY, J., absent; the other judges concur.