NORTH CAROLINA LAND & LUMBER CO. v BOYER, Sheriff.

(Circuit Court of Appeals, Sixth Circuit. October 2, 1911.)

No. 2,111.

1. CHATTEL MORTGAGES (§ 291*)—TITLE OF MORTGAGEE—DECREE ADJUDGING BREACH OF CONDITION—RELATION.

In the absence of statutory provision to the contrary, on breach of the conditions of a chattel mortgage, the title and right of possession to the property vests at once in the mortgagee, and, where the mortgagee brings suit to enforce such right and to foreclose the mortgagor's right of redemption, the decree therein is merely a judicial declaration of a pre-existing right, and, as a muniment of complainant's title, relates back to the date of the breach.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 291.*]

2. CHATTEL MORTGAGES (§ 138*)—BREACH OF CONDITION—PASSING OF TITLE TO MORTGAGEE—PROPERTY TEMPORARILY IN ANOTHER STATE.

The passing of title to personal property to a mortgagee for breach of condition of the mortgage, confirmed by decree of a court of competent jurisdiction, was no less effective with respect to a locomotive engine which constituted a part of the property because at the time of such passing of title the engine, which was in use in the interstate business of the mortgagor, chanced to be temporarily in another state than that of its permanent situs and where it was owned, and it was not thereafter subject to attachment in the foreign state by creditors of the mortgagor.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 138.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CHATTEL MORTGAGES (§ 138*)—SUIT TO FORECLOSE CHATTEL MORTGAGE—PROPERTY TEMPORARILY IN ANOTHER STATE—ATTACHMENT PENDENTE LITE.

Plaintiff brought suit in a federal court in North Carolina for strict foreclosure of a chattel mortgage covering property, among which was a locomotive engine in use by the mortgagor on a railroad running across the line into Tennessee, and then temporarily in the latter state on a trip. Receivers were appointed, but, before the engine had returned into North Carolina, an attachment was levied on it in Tennessee in an action against the mortgagor. Plaintiff replevied the engine in the present action, and later the court in North Carolina entered a decree of foreclosure confirming its title to all the mortgaged property. *Held,* that the attachment having been levied on the interest of the mortgagor after a declared breach of condition of the mortgage, and pending the suit to foreclose the mortgagor's equity of redemption in the state which was the situs of the property, was subject to the decree therein, and that the record in the foreclosure suit was admissible in the replevin suit in Tennessee to establish plaintiff's title.

[Ed. Note.—For other cases, see Chattel Mortgages, Dec. Dig. § 138.*]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Action at law by the North Carolina Land & Lumber Company against C. F. Boyer, Sheriff. Judgment for defendant, and plaintiff brings error. Reversed.

A. S. Barnard (W. J. & W. D. McSween, on the brief), for plaintiff in error.

G. W. Pickle (H. N. Cate and W. O. Mims, on the brief), for defendant in error.

Before SEVERENS and KNAPPEN, Circuit Judges, and EVANS, District Judge.

EVANS, District Judge. The plaintiff brought this action of replevin in the court below to recover from the defendant, the sheriff of Cocke county, Tenn., one Climax engine or locomotive of the value of $2,500, which the sheriff is alleged to have wrongfully attached as the property of the Catalouchee Company in a suit instituted in the chancery court of Cocke county styled Borches & Co. v. Catalouchee Company and others. It is averred in the declaration that the defendant unlawfully retained possession of the engine until August 12, 1905, at which time it was turned over to the plaintiff under a writ issued in this cause. Previous to the issual of the writ the plaintiff executed a replevin bond in due form under date of August 10, 1905. On March 21, 1910, the defendants filed a petition in which it was averred that, while the plaintiff was using the engine over its railroad it was derailed, wrecked, and destroyed. Under the law of Tennessee applicable to such a situation, they prayed for judgment for the value of the engine. The parties having waived a jury, the court tried the case, and, without making a finding of facts, rendered judgment against the plaintiff for $2,500, with interest for several years, the whole amount being $3,194.70, which, it was adjudged, should be paid to Boyer, the sheriff, and be held by him in lieu of the engine attached

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the suit pending in the state court, and which we shall call the Borches suit.

The plaintiff has brought the case here, and one of the vital questions involved is whether the trial court erred in sustaining the objections of the defendant to the introduction as evidence of a duly certified copy of the record of the Circuit Court of the United States for the Western District of North Carolina, at Asheville, in the case of the North Carolina Land & Lumber Company against the Catalouchee Company, and which, for brevity, we shall refer to as the North Carolina case. As stated in the first assignment of error:

"This record was offered for the purpose of showing that the plaintiff at the time the defendant levied an attachment upon the locomotive sued for had a prior valid lien upon said locomotive, which lien had been at the time of the commencement of this suit foreclosed in the said Circuit Court of the United States in the Western District of North Carolina, and title to said locomotive had been by the judgment and decree of said Circuit Court of the United States for the Western District of North Carolina, declared to be in the plaintiff. And further to show that at the time the defendant levied his attachment the plaintiff had declared a forfeiture of all rights of the Catalouchee Company in and to the locomotive sued for.

"The plaintiff is seeking by this action to recover possession of the locomotive which was attached by the defendant as the property of the Catalouchee Company. The error of the court consisted in not receiving and considering this evidence upon the ground that the defendant was not a party to the suit in the Circuit Court of the United States for the Western District of North Carolina and was not bound thereby, whereas, the court should have admitted said evidence and should have considered the same because the defendant levied upon said locomotive as the property of the Catalouchee Company and is claiming it as the property of said Catalouchee Company, and is therefore bound by any judgment or decree against said company in respect to the title to said property."

The suit thus referred to was instituted on October 10, 1903, and upon the ground that the conditions therein stipulated had been broken sought the foreclosure of a mortgage made by the Catalouchee Company to the North Carolina Land & Lumber Company upon a great amount and variety of property in North Carolina, including the Climax engine or locomotive now in question. Soon after the institution of the North Carolina suit, the court appointed receivers therein who took possession of all the mortgaged property then in North Carolina. The engine, however, had been used by the Catalouchee Company in hauling its freight over the railroad of another company which extended partly into Tennessee. On October 3, 1903, the Tennessee & North Carolina Railroad Company, S. H. Stansberry & Sons, and other creditors of the Catalouchee Company had separately sued the latter company in the state court of Cocke county, Tenn., and, having obtained attachments had caused them to be levied upon the engine in question while it was upon a journey into that state. But on October 12, 1903, the receivers under the orders of the court in the North Carolina case had made some satisfactory arrangement with those creditors, all their attachments were released, and possession of the engine was given to the receivers. However, before they got it back to North Carolina, it was on October 15, 1903, seized and levied upon

under the attachment in the Borches Case. It was in respect in this seizure that this action was brought.

At the outset, it may be remarked that, while the receivers thus got possession of the engine in Tennessee for the purposes of the North Carolina case, we lay little stress upon their possession of it at the time of the levy of the attachment in the Borches Case because in the view we take of the case the result must be the same, whether or not any effect be given to such possession by them.

Under the law of North Carolina the right of strict foreclosure exists. This right was sought to be enforced in the North Carolina case begun on October 10, 1903, and by the decree in that case rendered July 12, 1904, the complainant therein was afforded that relief, and was adjudged to be the owner of the engine. Did the decree in that case relate back either to the breach of the condition of the mortgage or to the commencement of the action and did the plaintiffs in the Borches Case, who acquired their attachment lien after both of those events and during the pendency of the North Carolina case, take their rights under that lien, subject to having it defeated by the judgment in the previously pending suit for foreclosing the mortgage? In the North Carolina case the engine appears to have been impleaded as a part of the mortgaged property, although at the time the suit was brought it was actually in Tennessee, having been taken there in the way indicated. Can the latter fact have any influence upon the plaintiff's right?

The views of the case held by the learned trial judge can best be stated in his own language. In his opinion it is said:

"The engine was attached by the defendants as the property of the Catalouchee Company in their suit in the chancery court of Cocke county on October 15, 1903. Obviously, therefore, there was no wrongful seizure or detention of the engine by the defendants so far as the North Carolina Land & Lumber Company is concerned, unless it held the legal title to the engine at the time of the attachment. And the decree rendered by the United States Circuit Court at Asheville in the case of North Carolina Land & Lumber Company v. Catalouchee Company, on March 12, 1904—if the same is to be properly construed as vesting title in the plaintiff to the engine in question on that date, as to which I express no opinion—would be manifestly unavailing in so far as the rights of the plaintiff in the present suit is concerned, since, if the engine was the property of the Catalouchee Company at the time it was attached, a subsequent decree transferring the title of the Catalouchee Company thereto to the plaintiff, in a suit in which the present defendants were not parties, would clearly only transfer such rights as the Catalouchee Company had, and be subject to whatever prior rights in the engine the defendants had acquired by reason of their prior attachment in the chancery court. In order, therefore, for the plaintiff to succeed, it must show that it had become the owner of the engine on the day of the attachment, October 15, 1903, or otherwise held the legal title thereto on that date. This, I think, it has entirely failed to show. The subsequent decree of the chancery court at Asheville obviously does not show this, as it could not in any aspect purport to be a divesture of title prior to the date of the decree, nor does it recite that the engine had become the property of the Land & Lumber Company on or before October 15, 1903, the decree, which was dated March 12, 1904, merely reciting that the Catalouchee Company should 'from henceforth stand absolutely debarred and foreclosed of and from all right, title,' and interest in the property described in the decree, and, even if it did so recite, its recitals would, it seems, not be competent as evidence against the present defendants, who were not parties to that cause."

[1] The plaintiff at the trial failed to show its ownership of the engine "on or before October 15, 1903," only because the court refused to permit it to read as evidence the record in the North Carolina case, and we have reached the conclusion that that ruling was erroneous upon two grounds. The first and most important of these is that upon the breach of the condition of the mortgage the legal title to the mortgaged property, including the engine in question, at once vested in the mortgagee, namely, the plaintiff in this case, subject to be divested only by an exercise of the right of redemption, which right the mortgagor in fact failed to exercise. The general doctrine to which we refer was stated in the opinion of the Supreme Court in Waterman v. Mackenzie, 138 U. S. 258, 11 Sup. Ct. 336, 34 L. Ed. 923, in this language, viz.:

"By a mortgage of personal property, differing in this respect from a pledge, it is not merely the possession or a special property that passes; but, both at law and in equity, the whole title is transferred to the mortgagee, as security for the debt, subject only to be defeated by performance of the condition, or by redemption on bill in equity within a reasonable time; and the right of possession, when there is no express stipulation to the contrary, goes with the right of property."

And that this is the general rule is stated in Jones on Chattel Mortgages, § 703. It follows that the decree in the North Carolina case was a judicial declaration of a pre-existing right.

[2] From the breach of the condition of the mortgage in this instance, it resulted that the plaintiff became the legal owner of the engine previous to the commencement of the foreclosure action in North Carolina on October 10, 1903, which ownership, thus acquired, was judicially established by the judgment in that case. That record thus became the muniment of the plaintiff's title and was clearly admissible as testimony in support of its claim for the recovery of the engine. If this be not so, it would follow that the ownership thus acquired and confirmed could not be shown at all outside of North Carolina in any litigation with a creditor of the Catalouchee Company who might attach the engine as the property of that company after its title had passed to the plaintiff. The attachment of Borches & Co. was against the property of the Catalouchee Company, but in fact was levied, not upon its property, but upon that of the plaintiff, and yet, when the plaintiff sued for the possession of the property thus taken, it was not permitted at the trial to introduce the record which clearly established its right thereto. If the legal title to the engine had passed to the plaintiff before the filing of the bill in the North Carolina case, it was wholly immaterial that such title passed in North Carolina, instead of Tennessee. The passage of the title was effective wherever it took place. If it passed at all, the creditors of the previous owner, the Catalouchee Company, had no right thereafter to seize it as the property of their debtor, and the seizure neither divested the plaintiff's title nor conferred any right upon Borches & Co. Some stress is laid upon the fact that the engine was actually in Tennessee when the North Carolina suit was brought, and it is claimed, for that reason, that the Circuit Court of the United States did not acquire jurisdiction over the engine. We have no doubt that the situs of this piece

of property was in North Carolina. We think that situs was not changed by the casual trips the engine made into Tennessee when it was being used in hauling the freight of the Catalouchee Company from North Carolina across the Tennessee state line. There was no intention that the engine should remain in Tennessee, but the intention was that it should, in regular course, return to North Carolina where it was owned. We think it is inadmissible to hold that the situs of personal property can be changed in that way. Great confusion might result from any other rule as applied to property along the borders of our various states. The situs of personal property is ordinarily in the state of the domicile of its owner. If not there, it is in a state where it is so permanently located as to become part of the mass of the property there. Situs is not acquired nor fixed by mere temporary presence in or passage through another state. In considering this phase of the case, we may discern quite instructive analogy and illustration in what the Supreme Court said in Louisville, etc., Ferry Co. v. Kentucky, 188 U. S. 396, 23 Sup. Ct. 463, 47 L. Ed. 513, where, after discussing many previous cases, it was remarked that it had theretofore been held in Hays v. Pacific S. S. Co., 17 How. 599, 15 L. Ed. 254:

"That certain steamers engaged in interstate commerce were not subject to taxation in a state where they might be temporarily when prosecuting their business, but were taxable at their home port, which was their situs, and where they belonged, the court saying: 'We are satisfied that the state of California had no jurisdiction over these vessels for the purpose of taxation. They were not, properly, abiding within its limits, so as to become incorporated with the other personal property of the state. They were there but temporarily engaged in lawful trade and commerce, with their situs at the home port, where the vessels belonged, and where the owners were liable to be taxed for the capital invested, and where the taxes had been paid.' "

The situs of this piece of property being in North Carolina, the court there had jurisdiction over it as being embraced in the mortgage. This jurisdiction was not destroyed when the engine, being temporarily out of that state for purposes of interstate commerce, was wrongfully seized as the property of another to whom it did not belong.

[3] We come now to the consideration of the second reason for the conclusion that the ruling of the trial court was erroneous. When the holder of the legal title to property or the mortgagee thereof is made a party to an action concerning it, when such action is not collusive and is diligently prosecuted to a final judgment, the general doctrine is that a purchaser, a mortgagee, or an attaching creditor whose rights or liens are acquired pendente lite takes subject to the determination of the pending suit, and cannot relitigate the rights settled by the judgment therein. It is also the general rule that the judgment rendered in the pending suit relates back to the date of its commencement. The manifest object and purpose of the North Carolina case was to obtain a strict foreclosure of the mortgage by a judgment of the court to the effect that, when the breach of the condition occurred, the legal title to the mortgaged property passed at once to the mortgagee. The judgment in the case went accordingly on July 12, 1904. The

result was the extinguishment of the mortgagor's equity of redemp-, tion and the confirmation of the title of the plaintiff as of the 10th of October, 1903, the date of bringing the suit, if, indeed, it was not as of the previous date when the breach of the condition of the mortgage occurred. That suit, it is true, was pending in North Carolina when the attachment lien was created. But the situs of the engine was then in North Carolina, and there it remained. Can the accidental circumstances that, when the North Carolina foreclosure suit was begun, the engine was in Tennessee, whither it had been sent on one of its regular journeys across the North Carolina state line, defeat the effect of the pendency of the suit to enforce it? We think not. In Story's Equity (13th Ed.) § 406, the general doctrine is thus stated:

"Ordinarily it is true that the decree of a court binds only the parties and their privies in representation or estate. But he who purchases during the pendency of a suit is held bound by the decree that may be made against the person from whom he derives title. The litigating parties are exempted from taking any notice of the title so acquired, and such purchaser need not be made a party to the suit. Where there is a real and fair purchase without any notice, the rule may operate very hardly. But it is a rule founded upon a great public policy; for otherwise alienations made during a suit might defeat its whole purpose, and there would be no end to litigation. And hence arises the maxim, 'pendente lite, nihil innovetur,' the effect of which is, not to annul the conveyance, but only to render it subservient to the rights of the parties in the litigation. As to the rights of these parties, the conveyance is treated as if it never had any existence, and it does not vary them."

The same views are clearly expressed in Bennet on Lis Pendens pp. 86–90. The authorities also seem to agree, for obvious reasons, that in applying the lis pendens doctrine an attaching creditor cannot stand on a better footing than that of an innocent purchaser for value. In the case of Fletcher v. Ferrel, 9 Dana, 372, 35 Am. Dec. 143, the Court of Appeals of Kentucky dealt with questions very closely related to those involved in this case, and, speaking through Judge Ewing, among other things, said:

"Whatever may be the doctrine applicable to purchases made in, and by citizens of, a distinct and independent nation, from that in which the suit is depending, we cannot doubt that within these United States purchases in one state pending a suit in another must be treated as pendente lite purchases, and subject to the rule applicable to such purchases."

We have been able to find no case in which the Supreme Court ruled upon the applicability of the lis pendens doctrine to personal property (other than negotiable paper and articles of ordinary commerce, as to which all the authorities seem to agree), but the subject of litigation in the Kentucky case was another kind of personal property, viz., slaves. Nevertheless the lis pendens doctrine was applied.

In Carr v. Lewis Coal Co., 15 Mo. App. 551, in the course of an elaborate and interesting opinion, the St. Louis Court of Appeals said:

"In Murray v. Lylburn, 2 Johns. Ch. [N. Y.] 441, Chancellor Kent doubts whether the doctrine ought to be carried so far as to affect sales of movable property, such as horses, cattle, and grain, and Judge Bradley in County of Warren v. Marcy [97 U. S. 106, 24 L. Ed. 977] supra, says that the doctrine is applicable to personalty, with the two exceptions of negotiable paper, and articles of ordinary commerce sold in the usual way. In New Hampshire,

however, the courts refuse to apply the doctrine to personalty (Chase v. Searles, 45 N. H. 511); whilst in Mississippi, on the other hand, it is said that the doctrine at this day applies with equal force to contracts in regard to personalty and those concerning real estate. McCutchen v. Miller, 31 Miss. 65. In Pennsylvania the doctrine is applied to nonnegotiable securities. Diamond v. Lawrence Co., 37 Pa. 353, 78 Am. Dec. 429.

"So far as the reasons on which the rule itself is based go, they seem to apply with equal force to personal property and real estate. The doctrine is an equitable one; but in law the same effect is produced by the rule that the purchaser takes only the title of his vendor. Every man is supposed to be attentive to what passes in the superior courts of the sovereignty where he resides, and some courts have based the doctrine upon the theory of notice. But it would seem that the doctrine really rests upon the public policy which does not allow litigating parties to give to others, pending the litigation, rights to the property in dispute, so as to prejudice the opposite party.  *  *  *

"We think that both reason and authority are for the conclusion that the doctrine of lis pendens is to be applied to personal property of the character in question in the present case, which is not an article of ordinary commerce, as are cattle and grain."

And it would seem reasonable that this doctrine should be applied in a case where, as here, the property is a distinct article not kept for sale as merchandise. In such case the reasons sometimes urged against the inclusion of personal property under the doctrine of lis pendens do not exist, and we have reached the conclusion that the devolution of the legal title upon the breach of the condition of the mortgage and the pendency of the North Carolina suit at the time the Borches suit was begun, alike extinguished and annulled the attachment lien acquired in the latter, eo instanti the judgment in the North Carolina case was rendered.

It results that it was erroneous to exclude the record in the North Carolina case as evidence in support of the title of the plaintiff. We think it was clearly admissible for that purpose. To hold otherwise and affirm the judgment of the court below obviously would destroy the plaintiff's rights under the mortgage and make paramount those acquired long subsequently by the levy of the attachment, all because the mortgaged engine in doing the work for which it was designed, and in the regular course of that work from day to day passed out of one of the states of the Union into another which adjoined it. We think the rights of a mortgagee of such property should not be so easily taken from him.

It is, however, contended by the defendant that it is not shown by the record in the North Carolina case that the engine was actually embraced in the mortgage enforced in that case either as property existing when the mortgage was made or as property acquired thereafter and coming within the terms of that instrument. It is true that the averments of the bill are expressed in somewhat general terms. The engine in question is not particularly described by name either in the bill or in the mortgage agreement. The latter describes the personal property in this language, namely:

"Fourth. The party of the second part agrees that, in the event of their failure to comply with the provisions of this contract, then all the property, both real and personal, belonging to the said party of the second part and situate upon the said land or used in the development of the same, shall become and be the property of the party of the first part, and the party of the

second part shall·not remove any of said plant or equipment, except through and by the consent of the party of the first part, and party of the second part agrees that all equipment and improvements that they put on the property shall be free and clear of all incumbrances."

By the decree in the North Carolina case it is "ordered, adjudged and decreed that the defendant, the Catalouchee Company, do from henceforth stand absolutely debarred and foreclosed of and from all rights, title, interest, estate, and equity of redemption of and in the following described land and premises, to wit," and, after specifically describing the lands, it proceeds:

"Together with all and singular the mills, machinery, railroad track, rolling stock, and equipment used in connection with said railroad, and all other improvements and fixtures attached to or located·or standing upon said tracts of land or either of them; and all the rights of way which have been acquired by the said defendant, the Catalouchee Company, over and upon the land of any person or persons whatsoever, together with the railroad track and the privileges and appurtenances thereunto belonging, or in any wise appertaining, which has been constructed by the said defendant, and running from the mouth of Big Creek up to and upon the lands heretofore described, said railroad track being in its entire length about 4½ miles.

"And it is further ordered, adjudged, and decreed that the said North Carolina Land & Lumber Company is the owner in fee simple and entitled to immediate possession of all of said tracts of land and the machinery and improvements above described,·free from and divested of any claims or liens of the defendant, the Catalouchee Company, for or on account of or by reason of its contract of purchase from the said North Carolina Land & Lumber Company or otherwise or for any amount which the Catalouchee Company may have paid under the terms and provisions of said contract."

After a most careful consideration we are of opinion that the entire record in the North Carolina case, as distinguished from the judgment alone, sufficiently shows that the engine was embraced in the mortgage, and that the title thereto passed to the plaintiff as we have indicated. The record was therefore competent as evidence in behalf of the plaintiff in the deraignment .of its title.

We need not notice the other errors assigned because they may .not arise at another trial.

But for the error indicated the judgment must be reversed, with costs, and, upon the return of the case, a new trial must be awarded, and further proceedings taken in accordance with law and the principles announced in this opinion.